**ZAMBELLI FIREWORKS MANUFAC- TURING CO., INC. d/b/a Zambelli Fireworks Internationale**

v.

**Matthew WOOD; Pyrotecnico F/X LLC, Appellants.**

No. 09–1526.

United States Court of Appeals, Third Circuit.

Argued Oct. 28, 2009.

Filed: Jan. 15, 2010.

App. 55.

Mary C. McGinley, David G. Oberdick, Meyer, Unkovic & Scott, Patrick Sorek (Argued), Leech, Tishman, Fuscaldo & Lampl, Pittsburgh, PA, Jane L. Volk, Sewickley, PA, Attorneys for Appellant, Matthew Wood.

Manning J. O'Connor, Patrick Sorek (Argued), Leech, Tishman, Fuscaldo & Lampl, Pittsburgh, PA, Attorneys for Appellant, Pyrotecnico F/X LLC.

Christina I. Kepplinger, Mark A. Willard (Argued), Eckert, Seamans, Cherin & Mellott, Pittsburgh, PA, Attorneys for Appellee.

Before: SMITH, FISHER and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

This appeal presents a question of the propriety of a preliminary injunction enforcing, under Pennsylvania law, a restrictive covenant not to compete. However, because the parties concede on appeal that the lack of complete diversity deprives this Court of subject matter jurisdiction, the threshold question before us is how to proceed in light of this jurisdictional defect. At the request of the plaintiff-appellee, we will exercise our authority under Federal Rule of Civil Procedure 21 to dismiss the dispensable nondiverse party, and thereby restore this Court's jurisdiction to reach the merits of the appeal. Because the restrictive covenant is an appropriately narrow protection of a legitimate business interest, and because Zambelli remains the appropriate entity to enforce the covenant under Pennsylvania state law, we will affirm the District Court's holding in those regards. However, because the District Court failed to require a bond in connection with the injunction, as required by Federal Rule of Civil Procedure 65(c), we will vacate the injunction and remand with instructions to impose such a bond should the District Court reissue the injunction.

## I.

### A.

Plaintiff Zambelli Fireworks Manufacturing Co., Inc. d/b/a Zambelli Fireworks Internationale ("Zambelli") is one of the oldest and largest fireworks companies in the United States, doing business in approximately 40 states. The company was historically family-owned and operated, first by George Zambelli, Sr. and later by his children Marcy, Danabeth, and George

Zambelli, Jr. Zambelli is a corporation incorporated under the laws of Pennsylvania, with its principal place of business in New Castle, Pennsylvania.

Defendant Pyrotecnico F/X, LLC ("Pyrotecnico") has been a direct competitor of Zambelli in the fireworks industry for many years. Pyrotecnico is comprised of several related companies, all of which are managed by Stephen Vitale. Pyrotecnico is a limited liability company registered under the laws of Nevada. Its sole member is Pyrotecnico of Louisiana, LLC, another limited liability company registered under the laws of Louisiana. Stephen Vitale, a resident of New Castle, Pennsylvania, is the managing member of Pyrotecnico of Louisiana, LLC.

Defendant Matthew Wood ("Wood"), a resident of Pompano Beach, Florida, works in the fireworks industry as a pyrotechnician and choreographer, executing fireworks displays in combination with music through the use of computer software. Prior to Wood's employment with Zambelli, Wood obtained an associate's degree in technical theater from Vincennes University and a bachelor's degree in theater from Indiana State University. Wood also had prior pyrotechnics experience in the areas of sales, agreements, design work, effects, and pyrodigital software. Although Wood had some prior experience with stage pyrotechnics and home fireworks, he had little experience in aerial fireworks displays on the scale of Zambelli's major shows.

In 2001, Zambelli hired Wood to work in its Florida office pursuant to the terms of an employment agreement containing a two-year non-compete provision. Wood's initial responsibilities with Zambelli included work on new and existing accounts, calling on customers, applying for permits, reviewing sites, and attending trade conferences. His responsibilities expanded over time as Zambelli provided Wood with valuable pyrotechnics training. Specifically, Wood received training in the layout and choreography of shows as well as the setup and use of the Zambelli systems. Wood gained hands-on experience and application of these skills by helping shoot aerial fireworks displays for Zambelli customers. In 2007, Zambelli paid for Wood to become a certified trainer for the Pyrotechnic Guild International. Wood also became licensed in Colorado and New York during the course of his employment with Zambelli.

In fulfilling his job responsibilities, Wood was privy to many of the inner workings of Zambelli's business. He was responsible for preparing business proposals, which required access to pricing information, contract terms, and client lists. In particular, Wood had access to an Excel spreadsheet that contained the formula Zambelli used to price its shows. Wood was also aware of the prices that Zambelli paid for its fireworks shells.

A significant portion of Wood's responsibilities required contact with Zambelli clients. Both in preparing business proposals and before and after fireworks shows, Wood was in communication with Zambelli clients throughout the country. Because Zambelli advertised Wood as one of its premier choreographers in connection with some of its highest profile shows, Wood's skills and experience were known both in the pyrotechnics industry and to Zambelli clients.

As Wood assumed increasing responsibilities in the Zambelli company, the Zambelli family considered Wood to be the "next generation" and "future of the company." Thus in 2005, the Zambellis asked Wood to sign an updated employment agreement that would ensure Wood's continued commitment to the company. This later agreement, signed June 2, 2005 (the "2005 Agreement"), superseded the earlier

2001 employment agreement.[1] The 2005 Agreement contained, *inter alia,* a number of provisions, including:

1. A clause prohibiting Wood from "engag[ing] in any manner in the pyrotechnic business" within the Continental United States or taking any position of employment with any company engaged in the sale or production of pyrotechnic displays for a period of two years after leaving Zambelli;

2. A non-solicitation provision proscribing Wood from soliciting any former customers or clients of Zambelli as well as any Zambelli employees for alternative employment for a period of two years after leaving Zambelli;

3. A confidentiality clause preventing the disclosure or use of trade secrets or any information regarding the operation of Zambelli's business;

4. A provision that Wood provide Zambelli with three months' notice of resignation;

5. A provision permitting a court to modify the terms of the 2005 Agreement in order to render it enforceable in the event the non-compete provision was found to be unreasonable;

6. A provision whereby Wood agreed to pay all legal fees, costs, and expenses if Zambelli prevailed in a legal proceeding to enforce the terms of the 2005 Agreement;

7. A choice of law provision stating that Pennsylvania law would govern the interpretation of the 2005 Agreement.

In May 2007, a major sale of Zambelli's stock took place, after which the company was no longer wholly owned by Zambelli family members. The transaction was structured as a stock sale as opposed to an asset purchase for a variety of reasons, including the retention of various state and federal permits, licenses, and contractual relationships. Following the sale, George Zambelli, Jr. was the only remaining Zambelli family member with stock ownership in the company. His interest increased from 20% to 50% and he acquired a right of first refusal to purchase outstanding stock from other shareholders. A holding company made up of four private investors acquired the remaining 50% of the stock. One of those investors, Douglas Taylor, assumed the role of CEO and President of Zambelli.

Wood, who had initially been attracted to the family-run nature of Zambelli, was displeased with the change in management and uncertain of the security of his employment with Zambelli. In January 2008, Taylor presented Wood with an "Employment Proposal" that outlined terms for a new employment agreement, requiring, among other things, that Wood assume substantial new job responsibilities. Wood did not sign the proposal.

In light of the changes in management and the expectation of increased job responsibilities, Wood contacted Stephen Vitale, Pyrotecnico's manager, in October 2007 regarding potential employment with Pyrotecnico. Vitale and Wood eventually executed an employment agreement in which Pyrotecnico agreed to hire Wood. It was a condition of Wood's employment with Pyrotecnico that he not take or use any Zambelli information or bring any trade secrets or proprietary information

---

1. Wood argued in the District Court that there was not sufficient consideration to bind him to the 2005 Agreement because he was already employed by Zambelli. The District Court held that Wood's "significant raise ... contemporaneous with the signing of the 2005 Employment Agreement" was sufficient consideration to render the agreement valid. *Zambelli Fireworks Mfg. Co., Inc. v. Wood,* No. 2:08–cv–415, 2009 WL 159182, at *11 (W.D.Pa. Jan.21, 2009). That issue was not raised on appeal and we do not address it here.

from Zambelli. Pyrotecnico was aware of the restrictive covenant in Wood's 2005 Agreement with Zambelli and agreed to pay Wood his salary for two years if the covenant were enforced and to indemnify Wood for his litigation expenses.

On February 11, 2008, Wood provided Zambelli with eleven days' notice that he was resigning, effective February 22, 2008. Wood began working for Pyrotecnico on March 3, 2008. Since his employment with Pyrotecnico, Wood and Pyrotecnico have actively attempted to minimize any conduct that may constitute a breach of the 2005 Agreement with Zambelli. Wood's work with Pyrotecnico is only internal and he does not have client or customer contacts. Wood's duties with Pyrotecnico primarily consist of editing music, serving as a technician or shooter on firework shows, assisting in the design of shows for existing Pyrotecnico customers, and training other employees in pyrotechnics.

### B.

Zambelli filed this action on March 26, 2008, against Wood and Pyrotecnico. Zambelli sought, *inter alia*, to enforce the terms of the restrictive covenant not to compete contained in the 2005 Agreement with Wood.[2] Zambelli filed a motion for a preliminary injunction, which the District Court granted in part on January 21, 2009. *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, No. 2:08–cv–415, 2009 WL 159182 (W.D.Pa. Jan.21, 2009).

The District Court held that the 2005 Agreement between Zambelli and Wood was enforceable under Pennsylvania state law. Specifically, the District Court held that Zambelli's protectable business interests included "customer goodwill" and "Wood's specialized training, knowledge and skill ... acquired during his seven years of employment[.]" *Id.* at *10. The Court also upheld the durational and geographic restrictions contained in the non-compete provision, but limited the scope of the restricted activities because the agreement, as written, "would literally prevent [Wood] from engaging in his chosen profession, [and] is not necessary for the protection of Zambelli's legitimate business interests[.]" *Id.* at *16. Accordingly, the Court "blue-penciled" the 2005 Agreement to conform to its preliminary injunction, which provided:

> Matthew Wood is hereby enjoined for a period of two years following the cessation of his employment with Zambelli on February 22, 2008 (i.e., until February 22, 2010) from designing or choreographing aerial pyrotechnic displays;

> Matthew Wood and Pyrotecnico F/X, LLC are enjoined for the same two-year period from contacting or soliciting business from any customer(s) or client(s) of Zambelli within the continental United States with whom Wood had business contact as an employee, agent or representative of Zambelli during the period of his employment with Zambelli; and

> Matthew Wood and Pyrotecnico F/X, LLC are enjoined for the same two-year period from publicizing, promoting or referencing Wood's design or choreography talent, experience and/or accomplishments while employed at Zambelli

---

**2.** Although the enforcement action was asserted against Wood, Zambelli filed a variety of other claims against Wood and Pyrotecnico, individually and jointly. Zambelli alleged misappropriation of trade secrets under 12 Pa. Cons.Stat. § 5301 *et seq.* against Wood, breach of fiduciary duty of loyalty against Wood, intentional interference with existing contractual relations against Wood and Pyrotecnico, intentional interference with prospective economic advantage against Wood and Pyrotecnico, unfair competition against Wood and Pyrotecnico, and civil conspiracy against Wood and Pyrotecnico. The preliminary injunction enforcing the non-compete clause is the only subject of this appeal.

in any advertising, marketing or sales endeavors.

*Id.* at *18. The District Court concluded that "the balance of the equities favor[ed] enforcement of the 2005 Employment Agreement as modified[.]" *Id.* This timely appeal followed.

On appeal, Wood and Pyrotecnico ask us to vacate the injunction on a variety of grounds. First, they contend that the 2007 stock sale effected a change of the Zambelli corporate entity that prevents "new" Zambelli from enforcing the 2005 Agreement absent an express assignment. Second, they argue that the restrictive covenant does not protect a legitimate business interest as required by Pennsylvania law. Third, they suggest the District Court was biased in its consideration by its allegedly improper observation that Wood had intentionally breached the 2005 Agreement. Finally, they argue that the District Court erred in failing to impose a bond as required by Federal Rule of Civil Procedure 65. Pyrotecnico also argues that it should not have been included in the scope of the injunction because it was not a party to the 2005 Agreement. Because we will dismiss Pyrotecnico as a nondiverse party and will vacate the injunction, this last issue is moot. After satisfying ourselves of our jurisdiction to proceed, we will address the remaining arguments in turn.

## II.

The District Court predicated its jurisdiction on the diversity of the parties under 28 U.S.C. § 1332. Though the absence of complete diversity deprives all federal courts of subject matter jurisdiction over this action, a federal court always has jurisdiction to determine its jurisdiction. *United States v. Ruiz,* 536 U.S. 622, 628, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002). We have appellate jurisdiction to review an interlocutory appeal from the entry of a preliminary injunction under 28

U.S.C § 1292(a)(1). We "review an order granting a preliminary injunction for abuse of discretion, the factual findings for clear error, and the determinations of questions of law de novo." *Bennington Foods LLC v. St. Croix Renaissance Group, LLP,* 528 F.3d 176, 178 (3d Cir.2008).

## III.

### A.

■ The threshold question before this Court is our subject matter jurisdiction in light of the absence of complete diversity among the parties. Federal courts are courts of limited jurisdiction, and when there is a question as to our authority to hear a dispute, "it is incumbent upon the courts to resolve such doubts, one way or the other, before proceeding to a disposition on the merits." *Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n,* 554 F.2d 1254, 1256 (3d Cir.1977).

#### 1.

■ We begin with the question of whether we have subject matter jurisdiction over this dispute. This case presents us with the opportunity to address, for the first time in this circuit, the rule for determining the citizenship of a limited liability company ("LLC") for diversity jurisdiction purposes. We now join our sister circuits in holding that the citizenship of an LLC is determined by the citizenship of each of its members.

The District Court below premised jurisdiction on the diversity of the parties, based on Zambelli's pleading in its Verified Complaint that it was a corporate citizen of Pennsylvania, Wood was a citizen of Florida, and Pyrotecnico "is a Nevada limited liability company with its principal place of business [in Nevada]." (App.50.) Pyrotecnico admitted this allegation in its Answer. The citizenship of the members of Pyrotec-

nico was not pled. However, in the course of the trial proceedings, Stephen Vitale, a Pennsylvania resident employed in Pyrotecnico's New Castle, Pennsylvania headquarters, testified that Pyrotecnico was a wholly-owned subsidiary of Pyrotecnico of Louisiana, LLC, of which he was the managing member. (App.920.)

Based on this record, this Court *sua sponte* noted the apparent absence of complete diversity and directed the parties to submit supplemental briefing on the question of this Court's jurisdiction. In supplemental briefing, all parties conceded the absence of complete diversity based on the rule, articulated in our sister circuits, that the citizenship of an LLC is determined by the citizenship of its members. Because Vitale is a citizen of Pennsylvania and a member of Pyrotecnico, he is not diverse from Zambelli, also a citizen of Pennsylvania.

Although the parties concede the absence of complete diversity on appeal, this circuit has not previously addressed the question of how to determine the citizenship of an LLC for diversity jurisdiction purposes. We will do so here in the hope of preventing the needless expenditure of litigant and judicial resources that occurs when a case proceeds to trial in the absence of subject matter jurisdiction.

■ Our jurisdiction to hear cases in diversity arises under 28 U.S.C. § 1332(a), which provides that district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and, and is between . . . citizens of different States." Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant. *See Exxon Mobil Corp. v. Allapattah Svcs. Inc.*, 545 U.S. 546, 553, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005); *Kaufman v. Allstate N.J. Insur. Co.*, 561 F.3d 144, 148 (3d

Cir.2009). The key inquiry in establishing diversity is thus the "citizenship" of each party to the action.

■ Most rules of citizenship are well established. A natural person is deemed to be a citizen of the state where he is domiciled. *See Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir.2008) (citing *Gilbert v. David*, 235 U.S. 561, 569, 35 S.Ct. 164, 59 L.Ed. 360 (1915)). A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c). And a partnership, as an unincorporated entity, takes on the citizenship of each of its partners. *Swiger*, 540 F.3d at 182.

We are asked now to resolve the citizenship of an LLC, a relatively new unincorporated business entity possessing some characteristics of both a corporation and a partnership. Although limited liability entities resemble corporations in many respects, including the passive management role performed by both limited liability entity-owners and corporate shareholders, *see Carden v. Arkoma Assocs.*, 494 U.S. 185, 200, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990) (O'Connor, J., dissenting) (arguing that passive owners are not real parties to the controversy and should be discounted for purposes of Section 1332), the Supreme Court has flatly rejected arguments in favor of extending the rule of corporate citizenship to analogously formed business entities, *see id.* at 189, 110 S.Ct. 1015 ("[A]lthough possessing 'some of the characteristics of a corporation' . . . [an unincorporated entity] may not be deemed a 'citizen' under the jurisdictional rule established for corporations[;] . . . [t]hat rule must not be extended."); *see also United Steelworkers of Am. v. R.H. Bouligny, Inc.*, 382 U.S. 145, 146–47, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965) (declining to extend the corporation exception to an unincorporated

labor union); *Great S. Fire Proof Hotel Co. v. Jones,* 177 U.S. 449, 454, 20 S.Ct. 690, 44 L.Ed. 842 (1900) (declining to extend the corporation exception to a "limited partnership association"); *Chapman v. Barney,* 129 U.S. 677, 682, 9 S.Ct. 426, 32 L.Ed. 800 (1889) (declining to extend the corporation exception to an unincorporated "joint stock company").

For this reason, every federal court of appeals to address the question has concluded that a limited liability company, as an unincorporated business entity, should be treated as a partnership for purposes of establishing citizenship. *See Harvey v. Grey Wolf Drilling Co.,* 542 F.3d 1077, 1080 (5th Cir.2008); *Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.,* 435 F.3d 51, 54 (1st Cir. 2006); *Wise v. Wachovia Sec., LLC,* 450 F.3d 265, 267 (7th Cir.2006); *Johnson v. Columbia Props. Anchorage, LP,* 437 F.3d 894, 899 (9th Cir.2006); *Gen. Tech. Applications, Inc. v. Exro Ltda,* 388 F.3d 114, 120 (4th Cir.2004); *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.,* 357 F.3d 827, 829 (8th Cir.2004); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.,* 374 F.3d 1020, 1022 (11th Cir.2004); *Handelsman v. Bedford Village Assocs. Ltd. P'ship,* 213 F.3d 48, 51 (2d Cir.2000). We now join them in that holding.

■ As we have held before, the citizenship of partnerships and other unincorporated associations is determined by the citizenship of its partners or members. *Swiger,* 540 F.3d at 182. Accordingly, the citizenship of an LLC is determined by the citizenship of its members. And as with partnerships, where an LLC has, as one of its members, another LLC, "the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be" to determine the citizenship of the LLC.

*Hart v. Terminex Int'l,* 336 F.3d 541, 543 (7th Cir.2003) (quotation omitted).

In light of this rule, Pyrotecnico's presence defeats complete diversity in this case. On the plaintiff side, Zambelli, as a corporation incorporated under the laws of Pennsylvania and with its principal place of business in New Castle, Pennsylvania, is a citizen of Pennsylvania. On the defendant side, Wood, who is domiciled in Florida, is a citizen of Florida. And Pyrotecnico, despite being a Nevada limited liability company, has a single member: Pyrotecnico of Louisiana, LLC, a Louisiana limited liability company. Tracing its citizenship through the layers, Pyrotecnico takes on the citizenship of the members of Pyrotecnico of Louisiana, including its managing member Stephen Vitale. Because Stephen Vitale is a resident of New Castle, Pennsylvania, Pyrotecnico is a citizen of Pennsylvania and is not diverse from Zambelli, another citizen of Pennsylvania. Complete diversity is therefore lacking.

### 2.

■ Having established that we lack subject matter jurisdiction, all parties agree that the suit cannot proceed with Pyrotecnico as a party. Zambelli argues that Pyrotecnico is a dispensable party under Federal Rule of Civil Procedure 19(b) and that this Court should exercise its authority under Federal Rule of Civil Procedure 21 to dismiss Pyrotecnico and proceed to hear the appeal on the merits as between Zambelli and Wood. Wood argues that Pyrotecnico is indispensable and that the dismissal of Pyrotecnico necessitates the dismissal of Wood.

■ Under this Court's continuing obligation to assess its subject matter jurisdiction, we can dismiss a suit *sua sponte* for lack of subject matter jurisdiction at any stage in the proceeding. *Carlsberg Res. Corp.,* 554 F.2d at 1256. However, consid-

erations of efficiency, fairness, and judicial economy weigh against a wholesale dismissal of the action at this stage. *See Caterpillar Inc. v. Lewis,* 519 U.S. 61, 75, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) ("Once a diversity case has been tried in federal court, with rules of decision supplied by state law[,] . . . considerations of finality, efficiency, and economy become overwhelming."); *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 836, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) ("[R]equiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention."). Such considerations are particularly relevant where, as here, the contract at the heart of this litigation is between two diverse parties who could refile an identical suit in the same federal forum.

Alternatively, we may exercise our authority under Rule 21 to dismiss the nondiverse party and proceed with the appeal. Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Although the rule technically directs the authority of district courts, the Supreme Court confirmed its applicability to federal courts of appeals in *Newman–Green.* In *Newman–Green* the district court proceeded to summary judgment with the jurisdictional flaw—the absence of complete diversity—undetected. 490 U.S. at 828–29, 109 S.Ct. 2218. The court of appeals noticed the flaw, invited the parties to address it, and, *en banc,* returned the case to the district court "to determine whether it would be prudent to drop [the jurisdiction spoiler] from the litigation." *Id.* at 830, 109 S.Ct. 2218. On certiorari, the Supreme Court held that the Court of Appeals itself had authority "to dismiss a dispensable nondiverse party" under Rule 21. *Id.* at 837, 109 S.Ct. 2218.

Our ability to dismiss a party thus turns on whether that party is dispensable to the litigation, a question over which the parties disagree. Whether a party is dispensable is determined by Rule 19(b), which states:

> If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. Pr. 19(b). Applying Rule 19(b), we have held that parties are indispensable if "in the circumstances of the case [they] must be before the court." *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1011 (3d Cir.1987) (internal quotations omitted). In other words, indispensable parties are " '[p]ersons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.' " *Id.* (quoting *Shields v. Barrow,* 58 U.S. 130, 139, 17 How. 130, 15 L.Ed. 158 (1854)).

Zambelli argues that Pyrotecnico is dispensable because "[a]t its heart, the case below centered around the former employment relationship . . . between Zambelli

and Wood." (Zambelli Supp. Br. 3.) Wood counters that Pyrotecnico is indispensable because "[t]he claims against Pyrotecnico are integral to the case[,]" (Wood Supp. Br. 2), including civil conspiracy claims against Pyrotecnico alleging Wood was a co-conspirator.

Weighing the Rule 19(b) factors, Pyrotecnico is not an indispensable party in this case. The claims against Wood and Pyrotecnico jointly, including the conspiracy claims, allege theories of joint and several liability, which need not be tried together under state law. *See, e.g., Baker v. AC & S, Inc.,* 729 A.2d 1140 (Pa.Super.1999) (holding parties who are jointly and severally liable need not be joined because the plaintiff can recover fully from any one of multiple joint tort-feasors (citing 42 Pa. Cons.Stat. § 8322)). The remaining claims against Pyrotecnico individually can be pursued in state court. Full relief is therefore available from both parties, albeit in separate forums.

Further, Wood's argument that "[t]he relief sought and obtained in the District Court was likewise directed to both Pyrotecnico and Wood" (Wood Supp. Br. 2), is particularly unpersuasive in light of Wood's allocation of three pages in his opening brief to the argument that Pyrotecnico should not have been included in the injunction because "the only cause of action remaining, and the only one on which the District Court could have based its partial grant of the preliminary injunction, was Count I for breach of contract against Wood." (Wood Br. 27.) Certainly for purposes of this appeal, which is limited only to the propriety of the injunction enforcing the non-compete agreement, Wood has essentially conceded that Pyrotecnico is not only dispensable but was inappropriately included in the scope of the injunction.

Accordingly, we hold that Pyrotecnico is a dispensable party to this action and we will exercise our Rule 21 authority to dismiss Pyrotecnico on appeal, thus restoring complete diversity in this case. Having cured the jurisdictional defect, we now proceed to the merits of the appeal.

**B.**

■ Wood first argues that the injunction is improper because the District Court incorrectly concluded that Zambelli was able to enforce the non-compete clause despite its failure to specifically assign the 2005 Agreement when the 2007 stock sale took place. In support of this position, Wood relies on *Hess v. Gebhard & Co.,* 570 Pa. 148, 808 A.2d 912 (2002), which held that, under Pennsylvania law, "a restrictive covenant not to compete, contained in an employment agreement, is not assignable to the purchasing business entity, in the absence of a specific assignability provision, where the covenant is included in a sale of assets." *Id.* at 922.

Wood's argument incorrectly assumes that a corporation that undergoes a substantial change in stock ownership is a separate "purchasing business entity" so that any restrictive covenants it seeks to enforce must be assigned to it by its predecessor. *Hess* was clearly premised on a "sale of assets" and not a transfer of stock. *Hess* does not answer the question presented here as to what assignment, if any, is required when a corporation merely transfers a majority of its stock.

Our research reveals no Pennsylvania appellate cases addressing the impact of a stock sale on the enforceability of a non-compete agreement. However, one district court in this circuit, confronted with a similar question, persuasively concluded under Pennsylvania law that a stock sale, unlike a sale of assets, does not necessitate an assignment in order for the corporation to enforce an employment agreement. *See Siemens Med. Sols. Health Servs. Corp. v.*

*Carmelengo,* 167 F.Supp.2d 752, 758 (E.D.Pa.2001). In *Siemens,* a purchaser acquired all of the stock of Shared Medical Systems, Corp. ("SMS"). SMS, under a new name, later sought to enforce the terms of an employment agreement against an employee. The defendant argued that the stock sale effected a corporate change in the employer such that he was no longer bound by the employment agreement. The *Siemens* Court rejected this argument, noting, "It is a basic tenet of corporate law that a change in stock ownership is merely a transfer of shareholder rights which does not, in and of itself, normally affect the existence of the corporate entity." *Id.* (citing Black's Law Dictionary 340 (6th ed.1990) and Victoria A. Braucher, 6A Fletcher Cyc. Corp., § 2843 (1997), for the proposition that stock ownership does not merge the legal identity of the shareholders and the corporate entity). The court concluded that the post-sale employer could enforce the employment agreement "because there [had] been no change in the corporate identity of his employer." *Id.* at 759.

Consistent with this conclusion, Pennsylvania courts have historically held that the transfer of a corporation's stock does not destroy the corporate entity because "a corporation is an entity irrespective of, and entirely distinct from, the persons who own its stock." *Commonwealth v. Monongahela Bridge Co.,* 216 Pa. 108, 64 A. 909, 912 (1906) (holding sale of all stock of bridge company to the city of Pittsburgh did not dissolve the corporate entity or dispatch the company's contract rights); *accord Corporate Express Office Prods., Inc. v. Phillips,* 847 So.2d 406, 414 (Fla. 2003) ("[B]ased on fundamental principles of commercial transactions and the applicable statutes, we hold that, in contrast to an asset purchase, neither a 100 percent purchase of corporate stock nor a corporate merger affects the enforceability of a noncompete agreement.").

Based on our review of Pennsylvania law and these axiomatic principles of corporate transactions, we agree that a stock sale, unlike a sale of assets, does not alter the corporate entity. Accordingly, we believe the Pennsylvania Supreme Court would hold that the transfer of some or all of the stock of a corporation has no effect on its ability to enforce a non-compete agreement. Because Zambelli's 2007 corporate restructuring was a stock sale rather than an asset purchase, there was no need for an assignment of the non-compete provision.

Finally, we briefly address Wood's argument that *Hess*'s holding turns on whether the intentions of the parties to the original employment agreement survive any corporate restructuring. We do not read *Hess* to require such a subjective and unworkable analysis. The court in *Hess* noted that an employment contract "is personal to the performance of both the employer and employee, the touchstone of which is that trust that each has in the other," 808 A.2d at 922, only in support of its conclusion that we should not gratuitously read an assignment into an employment agreement when there has been a change in the corporate entity. As we explained above, a stock sale is not a change in the corporate entity. A change in corporate culture alone cannot invalidate a legally binding contract. If Wood's employment agreement with Zambelli was intended to be contingent upon Zambelli continuing as a family-owned and operated business, those terms should have been included as material conditions to the 2005 Agreement.

We therefore hold that Zambelli, as the same corporate entity that entered into the 2005 Agreement, may now seek to enforce that agreement against Wood, and we affirm the District Court's holding to that effect.

**424**

**C.**

 Next, we address the enforceability of the non-compete agreement on its terms. Although restrictive covenants are a disfavored restraint on trade under Pennsylvania law, they are enforceable in equity where they are "incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and the restrictions imposed are reasonably limited in duration and geographic extent." *Victaulic Co. v. Tieman,* 499 F.3d 227, 235 (3d Cir.2007) (quoting *Hess,* 808 A.2d at 917). To be "reasonably necessary for the protection of the employer," Pennsylvania law requires that the covenant be tailored to protect legitimate business interests. *Victaulic,* 499 F.3d at 235.

Wood challenges on appeal the District Court's holding that Zambelli had two legitimate business interests in enforcing the restrictive covenant. First, the District Court concluded that "protection of Zambelli's customer goodwill is a legitimate business interest." 2009 WL 159182, at *10. Second, the District Court held that "[t]he specialized training, knowledge and skill Wood acquired during his seven years of employment with Zambelli is also a legitimate interest." *Id.* Both interests, the Court reasoned, can be safeguarded through a reasonable restrictive covenant in Wood's employment agreement.

The District Court's holding is consistent with Pennsylvania law on legitimate business interests. We have held, applying Pennsylvania law, that legitimate business interests include trade secrets, confidential information, goodwill, unique or extraordinary skills, and specialized training that would benefit competitors. *See Victaulic Co.,* 499 F.3d at 235. A business' goodwill entitled to protection is that which "represents a preexisting relationship arising from a continuous course of business." *Butler v. Butler,* 541 Pa. 364, 663 A.2d 148, 152 n. 9 (1995).

Here, Wood's considerable amount of client contact, and attendant familiarity with Zambelli's confidential business information, are both legitimate and protectable parts of a business' goodwill relationship with its clients. Under similar facts, the district court in *National Business Services Inc. v. Wright,* 2 F.Supp.2d 701 (E.D.Pa.1998), observed that an employer's goodwill interests were implicated where the former employee had "wide-ranging contact with [the employer's] customers and potential customers over a significant period of time ... [and] had access to confidential information regarding [the employer's] customers, products, technical details, and marketing strategies." *Id.* at 708. Significantly, the court there concluded that it is "virtually inconceivable that [the former employee] would be able to avoid utilizing the confidential information ... and exploiting [the employer's] customer goodwill." *Id.* The analysis is the same here—Wood had access to Zambelli's client list, pricing and business strategy, and had a longstanding relationship with Zambelli clients, who viewed him as a leader in the industry due, in part, to Zambelli's efforts to advertise Wood's specialized skills. Zambelli therefore had a legitimate business interest in ensuring that Wood did not transfer that goodwill to Pyrotecnico, its direct competitor.

Likewise, the District Court found that Wood received specialized training paid for by Zambelli and "acquired and developed unique skills that are very specific to the pyrotechnic industry." 2009 WL 159182, at *3. Specifically, Wood received personal training from Ernie Simmons on layout and choreography, *id.* at *2, gained first-hand experience by participating in aerial fireworks displays, *id.,* received specialized training from the Pyrotechnic Guild Inter-

national allowing him to become one of only sixty-eight certified trainers in the United States, *id.,* and became licensed in Colorado and New York, *id.* These are precisely the sort of specialized training and skills that we have previously held are a legitimate business interest, appropriately subject to protection through the use of a restrictive covenant. *Victaulic,* 499 F.3d at 235 (citing *Morgan's Home Equip. Corp. v. Martucci,* 390 Pa. 618, 136 A.2d 838, 846 (1957)).

In response, Wood relies primarily on *Hess* for the principle that "[i]f the covenant is inserted into the agreement for some other purpose, as for example, eliminating or repressing competition or to keep the employee from competing so that the employer can gain an economic advantage, the covenant will not be enforced." 808 A.2d at 920–21. This reasoning is unpersuasive in two regards. First, this language in *Hess* is purely dicta. The legal issue in *Hess* was the assignability of a restrictive covenant in an asset sale. Although the court made various forays into the legitimacy of the business interests, it does not purport to analyze or apply the off-hand statement quoted by Wood. Second, Wood suggests that this language applies to Zambelli's conduct without engaging the body of Pennsylvania case law holding that goodwill and specialized training are protectable interests. In fact, the court in *Victaulic* held that "not allowing competitors to profit from an employee's specialized training and skills is a

legitimate use of a covenant." 499 F.3d at 235. To the extent this reasoning conflicts with dicta from *Hess,* the principal holding in *Victaulic* guides our analysis.

Accordingly, we hold that the District Court did not err in holding that Zambelli had a legitimate business interest in its customer goodwill and Wood's specialized training and skills.[3]

### D.

■■■ Finally, Wood challenges the District Court's failure to require Zambelli to post a bond in connection with the preliminary injunction, as required by Federal Rule of Civil Procedure 65(c). Rule 65(c) states that "[t]he court may issue a preliminary injunction ... *only if* the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed.R.Civ.P. 65(c) (emphasis added).

In its Order granting in part Zambelli's request for a preliminary injunction, the District Court stated:

> The Court notes the security provision in Fed.R.Civ.P. 65(c). However, with no party having requested same and the Court seeing no imminent need for bond, security will be waived at this time subject to future request.

2009 WL 159182, at *19. Wood argues that the District Court abused its discre-

---

**3.** Wood also argues that the District Court improperly relied on its determination that the defendants "made a knowing, calculated decision to breach the 2005 Agreement" when it was weighing the equities of entering a preliminary injunction. (Wood Br. 12–14 (quoting 2009 WL 159182, at *17).) Although we agree that Wood's prior conduct is not relevant to whether Wood would suffer irreparable injury from the injunction, the District Court provided a number of additional reasons that the balance of the equities favor

enforcement of the 2005 Agreement including that, under the modified terms of the injunction, "Wood is able to maintain his employment at Pyrotecnico" subject to restrictions on what work he performs. 2009 WL 159182, at *17. Should the Court have occasion to consider the issuance of an injunction on remand, there will thus be other factors that weigh in favor of Zambelli when evaluating the risk of injury to Wood from a wrongful injunction.

tion in waiving the bond requirement. We agree.

As we held in *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 103 (3d Cir.1988), "[a]lthough the amount of the bond is left to the discretion of the court, the posting requirement is much less discretionary. While there are exceptions, the instances in which a bond may not be required are so rare that the requirement is almost mandatory." *Id.* Such an extremely narrow exception exists "when complying with the preliminary injunction 'raises no risk of monetary loss to the defendant.'" *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 210 (3d Cir.1990) (quoting *Sys. Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1145 (3d Cir.1977)).

Zambelli argues that this case falls within the rare exception to Rule 65(c) because the District Court held that "Wood will not suffer direct monetary harm if the 2005 Employment Agreement is enforced because Pyrotecnico has agreed to indemnify him for any loss of salary and legal expenses he may incur for the duration of any non-compete restriction." 2009 WL 159182, at *17.

We disagree that waiver of Rule 65(c) is appropriate here. We have never excused a District Court from requiring a bond where an injunction prevents commercial, money-making activities. Rather, we have recognized exceptions in other contexts only where "the balance of [the] equities weighs overwhelmingly in favor of the party seeking the injunction" and when the District Court "make[s] specific findings." *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d

Cir.1996); *see also Temple Univ. v. White*, 941 F.2d 201, 219 n. 26 (3d Cir.1991) (collecting cases). The District Court made no such "specific finding" here in support of its waiver of the requirements of Rule 65(c). Nor does Pyrotecnico's indemnification obligation have any bearing on the equities of imposing a bond; the fact that Wood may be able to recover litigation expenses from a third party does not excuse Zambelli's obligation to compensate Wood for his losses should he ultimately prevail in the litigation.[4]

Finally, we note that the District Court's observation that no party requested the Rule 65(c) bond imposes a prerequisite not required on the face of the rule. Rule 65(c) constrains a district court's authority to enter a preliminary injunction, making it contingent upon the posting of a bond. It does not impose any obligation on the parties to seek a bond.

We therefore hold that a district court lacks discretion under Rule 65(c) to waive a bond requirement except in the exceptionally narrow circumstance where the nature of the action necessarily precludes any monetary harm to the defendant, and that such bond shall be issued irrespective of any request by the parties. Because the District Court in this case erred in waiving the Rule 65(c) bond requirement, we will vacate the injunction and remand with instructions to impose such a bond should the District Court decide to reissue the injunction.

## IV.

For the foregoing reasons, we will dismiss Pyrotecnico from this suit, affirm the

---

4. This Court has explained:

> The requirement of security is rooted in the belief that a defendant deserves protection against a court order granted without the full deliberation a trial offers. That protection consists of a promise that the defendant will be reimbursed for losses suffered if it turns out that the order was erroneous in the sense that it would not have been issued if there had been the opportunity for full deliberation.

*Am. Bible Soc. v. Blount*, 446 F.2d 588, 595 n. 12 (3d Cir.1971).

District Court's holding that the restrictive covenant in the 2005 Agreement is enforceable under Pennsylvania law, vacate the preliminary injunction for failure to comply with the requirements of Rule 65(c), and remand to the District Court for proceedings consistent with this opinion.