**Vacate and Conditionally Grant and Opinion Filed September 17, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00166-CV

## IN RE ROSEWOOD PRIVATE INVESTMENTS, INC., ROSEWOOD VISION CORPORATION, INSIGHT EQUITY A.P. X COMPANY, INSIGHT EQUITY VISION PARTNERS, L.P., AND INSIGHT EQUITY MANAGEMENT COMPANY, LLC, Relators

**Original Proceeding from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-11870**

## MEMORANDUM OPINION
Before Justices Lang, Myers, and Whitehill
Opinion by Justice Whitehill

We withdraw our August 28, 2018 opinion on our own motion. This is now the opinion of the court.

This original proceeding concerns the enforceability of a forum–selection clause requiring that claims arising out of or related to an underlying agreement be brought in a Delaware federal court. Relators Rosewood Vision Corporation, Rosewood Private Investments, Inc., Insight Equity, A.P.X Company, LLC, Insight Equity Vision Partners, LP, and Insight Equity Management Company, LLC (Insight) complain of the trial court's denial of their motion to enforce the forum-selection clause and dismiss real party in interest's Wind Point Partners VII-A, L.P.'s (Wind Point) claims against relators. Having reviewed the petition, the real party's response, relators' reply, and the mandamus record, we conclude relators are entitled to relief from

the trial court's refusal to enforce the forum-selection clause, because the clause is enforceable and Wind Point did not establish that an exception to enforcement applies. Therefore, we conditionally grant the writ.

## I.  BACKGROUND

In 2014, Wind Point bought Vision Ease from Insight and Rosewood Vision Corporation for $180 million pursuant to a securities purchase agreement (SPA).[1]  The SPA, which is governed by Delaware law, includes a forum-selection clause providing that the parties agree to the exclusive jurisdiction of the Delaware federal courts "with respect to any claim or cause of action arising under or relating to" the SPA.  The SPA also includes a severability clause providing that if any part of the SPA is deemed invalid, illegal, or unenforceable the SPA is to be enforced "in such jurisdiction so as to best give effect to the intent of the parties."

Notwithstanding the forum-selection clause, Wind Point sued Insight in a Dallas County District court.  The suit alleges claims in connection with the sale for fraud, breach of contract, and violations of the Texas Securities Act.

Insight moved to dismiss the suit based on the forum-selection clause in the SPA.  The trial court denied the motion, and this original proceeding followed.  On February 23, 2018, we granted relators' motion to stay all trial court proceedings pending resolution of this original proceeding.

## II.  ANALYSIS

### A.  Applicable Law

To be entitled to mandamus relief, a relator must show both that the trial court abused its discretion and that relator has no adequate appellate remedy. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding).  Mandamus relief is available to enforce unambiguous forum-selection agreements because there is no adequate remedy by appeal when a trial court

---

[1] Wind Point sold Vision Ease in 2017, but received an assignment of claims and rights it contends are sufficient to maintain standing to sue.

abuses its discretion by refusing to enforce a valid forum-selection clause that covers the dispute. *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 675 (Tex. 2009) (orig. proceeding) (per curiam).

Forum-selection clauses provide parties with an opportunity to contractually preselect the jurisdiction for dispute resolution. *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 436 (Tex. 2017). Enforcing "valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system," such as sparing litigants the time and expense of pretrial motions to determine the proper forum for disputes. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33(1988) (Kennedy, J., concurring).

Furthermore, failing to give effect to contractual forum-selection clauses and forcing a party to litigate in a forum other than the contractually chosen one amounts to "'clear harassment' . . . injecting inefficiency by enabling forum-shopping, wasting judicial resources, delaying adjudication on the merits, and skewing settlement dynamics . . . ." *In re AutoNation, Inc.*, 228 S.W.3d 663, 667–68 (Tex. 2007) (orig. proceeding). Both Texas and federal courts recognize that public policy strongly favors enforcing forum selection clauses. *Rouse v. Tex. Cap. Bank, N.A.*, 394 S.W.3d 1, 8 (Tex. App.—Dallas 2011, no pet.).

A trial court abuses its discretion if it refuses to enforce a forum-selection clause unless the party opposing enforcement clearly shows that: (i) the clause is invalid because of fraud or overreaching (ii) enforcement would be unreasonable or unjust; (iii) enforcement would contravene a strong public policy of the forum where the suit was brought; or (iv) the selected forum would be seriously inconvenient for trial. *See In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 231–32 (Tex. 2008) (orig. proceeding) (per curiam). Thus, a party attempting to show that such a clause should not be enforced bears a heavy burden. *Id.*

**B. Does the forum selection clause apply to the underlying proceeding?**

**1. Applicable Standards**

Before we may enforce a forum-selection clause, we must determine whether the clause applies to the claims asserted in the lawsuit. *Deep Water Slender Wells, Ltd. v. Shell Exploration & Prod., Inc.*, 234 S.W.3d 679, 687–88 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

The clause at issue here provides:

> Consent to Jurisdiction. EACH OF THE PARTIES HERETO AGREES TO THE EXCLUSIVE JURISDICTION OF THE FEDERAL COURTS LOCATED WITHIN THE STATE OF DELAWARE WITH RESPECT TO ANY CLAIM OR CAUSE OF ACTION ARISING UNDER OR RELATING TO THIS AGREEMENT . . . .

Wind Point argues that the underlying proceeding does not fall within the above clause, because the clause governs only claims that can be brought in federal court and the claims here cannot be brought in federal court. We reject Wind Point's argument.

When construing a forum selection clause, courts use a common-sense approach by examining the clause to determine if it covers the claims. *See In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 677–78 (Tex. 2009) (per curiam). Because forum-selection clauses are contractual, we apply contract interpretation principles. *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 700 (Tex. App.—Dallas 2010, no pet.). Thus, our primary goal is to give effect to the written expression of the parties' agreement. *Sw. Intelecom, Inc. v. Hotel Networks Corp.,* 997 S.W.2d 322, 324 (Tex. App.—Dallas 1999 pet. denied). We give terms their plain, ordinary, and generally accepted meaning unless the contract shows otherwise. *CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.*, 222 S.W.3d 889, 895 (Tex. App.—Dallas 2007, pet. denied).

The starting point is the clause's language. *Pinto Tech. Venture, L.P. v. Sheldon*, 526 S.W.3d 428, 437 (Tex. 2017). The clause at issue here covers "any claim or cause of action arising out of or relating to [the SPA]." Additionally, the clause unambiguously encompasses claims

"relating to" the SPA. *See Diamond Offshore (Bermuda), Ltd. v. Haaksman,* 355 S.W.3d 842, 848 (Tex. App.—Houston [14th Dis.] 2011, pet. denied).

The words "arising out of" and "relating to" have broad significance. *Id.* Indeed, such broad language typically is deemed to encompass any claim that has some possible relationship with the agreement. *See RSR Corp.*, 309 S.W.3d at 701. Furthermore, when all of the claims arise out of the parties' contractual relations and implicate the contract's terms, the forum-selection clause will encompass all of the causes of action relating to the agreement. *Young v. Valt.X Holdings, Inc.*, 336 S.W.3d 258, 263 (Tex. App.—Austin 2010, pet. dism'd).

Moreover, the clause here specifies that the Delaware federal courts have "exclusive" jurisdiction. Therefore, the forum-selection clause is mandatory. *Deep Water Slender Wells*, 234 S.W.3d at 687. Mandatory forum-selection clauses are presumptively enforceable. *In re Int'l Profits*, 274 S.W.3d at 675.

### 2. Application

Wind Point's petition asserts claims for fraud, Texas Securities Act violations, and breach of contract. Specifically, Wind Point's fraud claim alleges "fraud in the preparation and presentation of financial statements upon which the purchase price of the SPA was calculated," and by "materially misrepresenting the amount of Vision Ease's working capital." Likewise, Wind Point's Texas Securities Act claim relates to the purchase of securities "pursuant to the SPA." And the breach of contract claim alleges breaches of the SPA. Thus, the SPA's plain language, read with Wind Point's petition, establishes that Wind Point's claims both arise out of and relate to the SPA.

However, citing *Troy Corp. v. Schoon*, No. CA1959-VCL, 2007 WL 949441, at *3 (Del. Ch. March 26, 2007) (not designated for publication),Wind Point insists that the clause's reference to federal courts means that the clause applies only when federal jurisdiction can be invoked. Wind

Point further argues that because of this federal court limitation, the trial court was required to interpret the clause to determine how Delaware law would construe it if there was no federal forum available.

Conversely, Insight argues that *Schoon* is distinguishable because the clause at issue there identified a federal forum "unless such court is unavailable," whereas this clause includes no such qualifying language. But that is not the only reason that *Schoon* is distinguishable from this case.

In *Schoon*, a Delaware corporation sued two other Delaware corporations and a Delaware limited partnership on various claims, including breach of contract and breach of fiduciary duty. That is, indisputably, there was incomplete diversity because there were Delaware corporate citizens on both sides of the case. And there was no federal question involved in that case.

The defendants moved to dismiss based on a forum selection clause in one of the parties' agreements. That clause provided for exclusive jurisdiction over any dispute "with respect to, in connection with or arising out of the agreement" in a court for the Southern District of New York, "unless such court is unavailable."

In denying the motion to dismiss, the court noted that while "questions of federal subject matter jurisdiction are, in most circumstances, the specific province of the federal court charged with entertaining a given claim," the parties in that case could not argue "with any modicum of seriousness" that federal subject matter jurisdiction existed over any aspect of that suit. The court therefore concluded that "it is indisputably clear that a federal tribunal could not adjudicate this action" and thus "the federal court . . . is most assuredly 'unavailable.'" *Id.*

The court further reasoned that by including the unavailability language the parties contemplated, but chose not to address, what would happen if the United States District Court for the Southern District of New York was unavailable. *Id*. at 4. Thus, the court held that the parties intended for the forum-selection clause to not apply if the federal court was unavailable. *Id*.

The present situation is different because the unavailability of a federal court has not been conclusively established, and the SPA provides a remedy even if a Delaware federal court would lack jurisdiction.

First we examine the arguments concerning whether complete diversity would exist in Delaware. In so doing, we conclude that this record does not present a case where federal jurisdiction undeniably cannot be invoked. In the court below, Wind Point argued that diversity was the only potential basis for jurisdiction, and the parties are not diverse because it is a Delaware citizen.[2] The diversity question here, however, is more complicated and nuanced than it was in *Schoon.*

Diversity jurisdiction exists under 28 U.S.C. §1332 when there is a civil action between citizens of two different states and at least $75,000 in controversy. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). For complete diversity to exist, no plaintiff may be a citizen of the same state as any defendant. *See Zambelli v. Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). The diversity analysis here involves the citizenship of a trust.

The method for determining a trust's citizenship is "long unsettled and the subject of much debate." *Raymond Loubier Irrevocable Trust v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017). And the circuits have been split on how to apply these principles. *Compare, Ind. Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 318 (7th Cir. 1998) (for diversity purposes, underwriting syndicate was citizen of all jurisdictions in which "names" were citizens), *with GBForefront, L.P. v. Forefront Mgmt. Grp., LLC,* 888 F.3d 29, 32 (3d Cir. 2018) (diversity determination required remand to determine whether trusts that comprised purchaser were traditional or business trusts).

In *Americold Realty Trust v. Conagra Foods, Inc.*, __ U.S.__, 136 S. Ct. 1012, 1016 (2016), the supreme court held that, for diversity purposes, a real estate investment trust (REIT) organized

---

[2] Wind Point did not assert any federal question claims.

under Maryland law for the benefit of its shareholders takes its citizenship from all of its shareholders. In so concluding, the court distinguished between (i) traditional trusts establishing only fiduciary relationships and having no legal identity distinct from their trustees and (ii) the variety of unincorporated artificial entities to which states have applied the "trust" label, but that have little in common with traditional trusts. The REIT was one of the latter entities. *Id.*

But when acknowledging that not all trusts were like the REIT before it, the court stated, "[f]or a traditional trust . . . there is no need to determine its membership, as would be true if the trust, as an entity were sued." *Id.* As many federal courts have observed, the meaning of the foregoing language is difficult to ascertain, and "seems open to several interpretations." *Zoroastrian Ctr. & Darb-E-Mehr of Metro D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 749 (4th Cir. 2016); *Wang by and through Wong v. New Mighty U.S. Trust*, 843 F.2d 487, 493 (D.C. Cir. 2016). Thus, the issue is far from settled among the federal circuits.

According to Wind Point, at least one of its limited partners is a pension trust that has beneficiaries or participants who are Delaware citizens. Alternatively, Wind Point claims that at least one of the other limited partners is a trust with a trustee that is a Delaware corporation and thus, regardless of whether the citizenship of the trustee or the citizenship of the trust beneficiaries is used in the diversity calculus, the outcome remains the same. This argument, however, oversimplifies and ignores the struggle with the *Americold* holding that persists in the federal circuits. Moreover, even if we were inclined to undertake such an analysis, Wind Point does not specifically identify the types of trusts to which our analysis would apply. It also does not identify the individuals' domicile, or trace citizenship through the layers of partners and members for each

unincorporated entity.[3]  Thus, the record does not clearly establish the absence of federal diversity jurisdiction.[4]

Second, even if a federal court were to determine that diversity is lacking, the SPA provides a remedy.  Specifically, the SPA contains this severability clause:

> Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable Law, but if any provision of this Agreement is held to be invalid, illegal, or unenforceable in any respect and under any applicable Law in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other provision or any other jurisdiction, and, for purposes of such jurisdiction, such provision *or portion thereof* shall be struck from the remainder of this Agreement, which shall remain in full force and effect. This Agreement shall be reformed, construed and enforced in such jurisdiction so as to best give effect to the intent of the Parties under this Agreement.

(emphasis added).  Thus, if a federal forum were not viable, the severability clause could be used to strike the word "federal" from the forum selection provision, thereby allowing the parties to proceed in a Delaware state court so as to effectuate the parties' intent.  *See S. Intelcom*, 997 S.W.2d at 324.  The severability clause, including its reference to a "portion" of a provision, indicates that, unlike *Schoon,* the parties here provided a remedy that would require their disputes to be resolved by Delaware state courts should the federal system be unavailable.

Finally, unlike *Schoon*, nothing in the plain language of the forum-selection clause at issue here requires us to determine whether the federal court is amenable to jurisdiction or otherwise "available."[5]  Thus, our declining to do so is not contrary to the parties' objective intent expressed in the SPA.

---

[3] A natural person is deemed a citizen of the state where he is domiciled.  *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir. 2008). A partnership as an unincorporated entity takes on the citizenship of each of its partners.  *Zambelli,* 592 F.3d at 419.  Thus, to determine the citizenship of an unincorporated entity, citizenship "must be traced through however many layers of partners or members there may be." *Id*. at 420.

[4] The parties dispute the admissibility of the evidence Wind Point offered to establish its citizenship facts.  Specifically, Wind Point submitted the affidavits of Ron Lieberman, one of the limited partners, and of Robert Hunkeler, Vice-president of Investments at International Paper Company in charge of the International Paper Company pension trust (the pension trust is a Wind Point limited partner).  Insight filed numerous objections to the affidavits, but the trial court did not rule.  Insight then sent a letter to the court requesting a ruling, but the trial court still did not rule. Wind Point filed a motion for leave to supplement the affidavits, but the trial court did not conduct a hearing or rule on this motion.   But even if we were to assume the evidence was properly admitted, the record does not conclusively demonstrate the absence of federal diversity jurisdiction.

[5] In addition, diversity jurisdiction is based on the citizenship of the parties at the time a federal suit is filed.  *See Grupo Dataflux v. Atlas Global Grp.*,L.P., 541 U.S. 567, 570–71 (2004).  Here, no such suit has been filed.

Therefore, we conclude that the federal court is best situated to determine its own jurisdiction. Indeed, courts in other jurisdictions have concluded that the federal jurisdiction issue can and should only be decided by the federal court. *See e.g., Lewis v. Townsend*, 108 So.3d 184, 187–88 (La. Ct. App. 2012); *McIntosh Cty. Bank v. St. Regis Mohawk Tribe*, No. 182-63-03, 2004 WL 1878201, at *3 (N.Y. Sup. Ct. Aug. 18, 2004) (2004 NY Slip Op. 50920(u)); *Aqua Sun Mgmt., Inc. v. Divi Time Ltd.,* 797 So.2d 24, 24–25 (Fla. Dist. Ct. App. 2001). These decisions are consistent with Texas's well-established policy that forum-selection clauses are prima facie valid and will be enforced absent a strong showing that the clause should be set aside. *See In re AIU Ins., Co.*, 148 S.W.3d 109, 113–114 (Tex. 2004) (orig. proceeding).

Having concluded that the clause is enforceable, we turn to whether Wind Point clearly established that one of the enforcement exceptions applies.

## C.     Did Wind Point establish that an enforcement exception applies?

Wind Point argues only one exception to enforcement—that enforcement would be unjust and unreasonable. *See Lyon Financial*, 257 S.W.3d at 231–32. According to Wind Point, it demonstrated that it could not bring its claims in federal court, and there is no other forum available.

We have concluded, however, that the record does not establish that Wind Point cannot bring its claims in federal court. Moreover, even if a federal court ultimately determines that there is no diversity jurisdiction upon which the suit can proceed in federal court, the severability clause provides a mechanism for allowing the parties to proceed in a Delaware state court.

Thus, on this record, we conclude that Wind Point has not met its "heavy burden" to clearly establish that enforcement of the forum-selection clause would be unjust or unreasonable.

**D.      Is Insight entitled to mandamus relief?**

We have concluded that the forum-selection clause is valid and the trial court abused its discretion by refusing to enforce it. *See Int'l Profit*, 274 S.W.3d at 675. "Subjecting a party to trial in a forum other than that agreed upon and requiring an appeal to vindicate the rights granted in a forum-selection clause is clear harassment. There is no benefit to either the individual case or the judicial system as a whole." *In re AIU*, 148 S.W.3d at 117. Thus, there is no adequate remedy by appeal. *In re JP Morgan Chase Bank, N.A.*, No. 05-17-01174-CV, 2018 WL 1312470, at *2 (Tex. App,—Dallas Mar. 14, 2018, orig. proceeding) (mem. op.).

## III.  CONCLUSION

We conclude the trial court abused its discretion by refusing to enforce the forum-selection clause and denying relators' motion to dismiss. We vacate our February 23, 2018 stay, conditionally grant relators' petition for writ of mandamus, and direct the trial court to issue a written order, within fifteen (15) days of the date of this opinion, vacating its December 20, 2017 order denying relators' motion to dismiss, and dismissing the claims of the real parties in interest. We are confident the trial court will comply, and the writ will issue only if it fails to do so.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

180166F.P05

–11–