**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3143
_____

TULLETT PREBON PLC,
                                        Appellant

v.

BGC PARTNERS, INC.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-09-cv-05365)
District Judge:   Hon. Stanley R. Chesler
_____

Argued April 14, 2011

BEFORE:  FISHER, JORDAN, and COWEN, <u>Circuit</u> <u>Judges</u>

(Filed: May 13, 2 011)

Robert M. Abrahams, Esq.
David Momborquette, Esq.
Schulte, Roth & Zabel
919 Third Avenue
New York, NY 10022

Joseph Boyle, Esq.
Vincent P. Rao, II, Esq.
Kelley, Drye & Warren
200 Kimball Drive
Parsippany, NJ 07054

M. Norman Goldberger, Esq. (Argued)
Ballard Spahr
1735 Market Street
51st Floor
Philadelphia, PA 19103

    Counsel for Appellant

Donald A. Robinson, Esq.
Leda Dunn-Wettre, Esq.
Keith J. Miller, Esq.
Robinson, Wettre & Miller
One Newark Center
19th Floor
Newark, NJ 07102

Hallie B. Levin, Esq.
John N. Orsini, Esq.
Eric Seiler, Esq. (Argued)
Friedman, Kaplan, Seiler & Adelman
7 Times Square
New York, NY 10019

    Counsel for Appellee

_____

OPINION
_____

COWEN, <u>Circuit</u> <u>Judge</u>.

In this diversity action, Plaintiff Tullett Prebon, plc ("Tullett Prebon"), appeals from the order of the United States District Court for the District of New Jersey granting the motion to dismiss filed by Defendant BGC Partners, Inc. ("BGC"). The District Court dismissed this action because, among other things, it found that Tullett Prebon's two American subsidiaries are necessary parties, the joinder of at least one of these subsidiaries is not feasible because it would destroy complete diversity, and both

2

subsidiaries constitute indispensable parties in this litigation. Because the District Court did not commit any reversible error with respect to this determination under Federal Rule of Civil Procedure 19, we will affirm.

I.

The parties in this diversity action are involved in the inter-dealer broker business. Inter-dealer brokers match large wholesale bids and offers of securities and other financial products made by financial institutions (and usually purchased by other financial institutions). These products are typically purchased "over the counter," which means they are not traded on any organized exchange. Inter-dealer brokers are organized around "desks," which specialize in specific types of products. Allegedly, it is critical for such firms to maintain liquidity in the form of both a sufficient pool of potential buyers and sellers as well as a critical mass of brokers working at each desk. Interference with one desk also allegedly may have a ripple effect on a firm's other desks because buyers often need to acquire positions in multiple financial products at one time.

Tullett Prebon has several wholly-owned subsidiaries around the world, including two subsidiaries in the United States: (1) Tullett Prebon Americas Corp. ("Tullett Americas"), a Delaware corporation; and (2) Tullett Prebon Financial Services LLC ("Tullett Financial"), a limited liability company[1] (collectively "Tullett Subsidiaries").

_____

[1] While Tullett Financial is organized under Delaware law, the District Court noted that this limited liability company's citizenship could not be determined without knowing the citizenship of its individual members. See, e.g., Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 418-20 (3d Cir. 2010). BGC moved on appeal to file a supplemental appendix, which contained documentation indicating that Tullett Americas constitutes Tullett Financial's sole member. Tullett Prebon filed an opposition to this appellate

3

BGC is also incorporated in Delaware, and, like its competitor, it owns several subsidiaries, including BGC Financial, L.P. ("BGC Financial").

The District Court observed that Tullett Prebon alleged in its First Amended Complaint that BGC and its subsidiaries "have been pursuing a global strategy of luring brokers employed by [Tullett Prebon] subsidiaries to terminate their employment with the Tullett desks and join BGC operations." Tullett Prebon, plc v. BGC Partners, Inc., No. 09-5365, 2010 WL 2545178, at *2 (D.N.J. June 18, 2010) (footnote omitted). Although referring to other raids that have occurred in other countries,[2] the First Amended Complaint clearly focused on the so-called "Raid." The pleading expressly defined this "Raid" as "the poaching of 77 brokers that were taken from several of Tullett Prebon's New-Jersey-based subsidiaries [specifically the Tullett Subsidiaries]." (A29.) This "Raid" is currently the subject of arbitration proceedings pending before the Financial Industry Regulatory Authority ("FINRA"), involving the Tullett Subsidiaries, BGC Financial, and several individuals.

Tullett Prebon claimed that "it has brought this action because 1) the subsidiaries cannot recover for all of the damages suffered in the Raid, that is, those damages unique to [Tullett Prebon], and 2) the FINRA arbitration cannot reach the conduct of BGC, the parent company defendant to this lawsuit, as it is not a FINRA member." Tullett Prebon, 2010 WL 2545178, at *2. Tullett Prebon allegedly suffered the loss of $387 million in

motion.

[2] We note that the alleged raid on the Tullett Prebon subsidiary in London was the subject of litigation before the English High Court of Justice, but the parties eventually entered into a judicially approved settlement agreement.

market capitalization, as measured by the drop in its stock price between August 13, 2009 (the day before the "Raid" was announced) and December 28, 2009. It further alleged that the misconduct has caused harm to its reputation and that BGC wrongfully obtained and used trade secrets and other confidential information belonging to Tullett Prebon and its subsidiaries. Tullett Prebon ultimately advanced five state-law causes of action: (1) a claim under New Jersey's RICO statute; (2) unfair competition; (3) misappropriation of trade secrets and confidential information; (4) tortuous interference with business relationships; and (5) "raiding."

BGC moved to dismiss on a number of grounds. Among its theories, BGC asserted that Tullett Prebon lacks standing to sue and is not a real party in interest. It further argued that the Tullett Subsidiaries are necessary and indispensable parties under Rule 19. On June 18, 2010, the District Court granted the motion to dismiss on these two alternative grounds.

The District Court had jurisdiction to hear this case pursuant to 28 U.S.C. § 1332(a)(2) because BGC is a Delaware corporation with its principal place of business in New York, Tullett Prebon is a United Kingdom corporation headquartered in London, and the subject matter in controversy exceeds the sum or value of $75,000.00. We have jurisdiction pursuant to 28 U.S.C. § 1291. Though we do not address BGC's prudential standing argument, we find that Article III's requirement of cases or controversies is met. Tullett Prebon alleged a concrete and redressable injury that is fairly traceable to the actions of BGC. See Franchise Tax Bd. Of Cal. v. Alcan Aluminum Ltd., 493 U.S. 331, 336 (1990).

5

II.

Rule 19 mandates a two-step process:  (1) the court first must determine whether the absent party is "necessary" under Rule 19(a); and (2) if the party is "necessary" and joinder is not feasible, then the court must decide whether the party is "indispensable" under Rule 19(b).  See, e.g., Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007).  In this case, it appears undisputed that, at the very least, the joinder of Tullett Americas (as a citizen of Delaware like BGC itself) would destroy the "complete diversity" necessary for federal jurisdiction.[3]  See, e.g., Zambelli Fireworks Mfg. Co., 592 F.3d at 419 ("Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant."  (citing Exxon Mobil Corp. v. Allapattah Servs. Inc., 545 U.S. 546, 553 (2005); Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 148 (3d Cir. 2009))).  If such a party is then held to be indispensable under Rule 19(b), "the action cannot go forward." Gen. Refractories Co., 500 F.3d at 312 (citing Janney Montgomery Scott v. Shepard Niles, Inc., 11 F.3d 399, 404 (3d Cir. 1993)).  With respect to the District Court's ruling under Rule 19(a), we exercise plenary review over its conclusions of law and review its factual findings for clear error.  See, e.g., id.  On the other hand, the District Court's indispensability determination under Rule 19(b) must be reviewed for an abuse of discretion.  See, e.g., id.

---

[3]  Because the specific status of Tullett Financial as another non-diverse Delaware citizen thereby appears to be superfluous to our analysis and ultimate determination, we will deny as moot BGC's motion to file a supplemental appendix.

6

After fully considering the various arguments advanced by the parties, we determine that the District Court properly applied the two-step analysis and appropriately dismissed this action. Accordingly, the Court need not—and does not—consider the District Court's alternative holding that Tullett Prebon lacks standing. Simply put, this case cannot go forward without the participation of subsidiaries who were, at the very least, the direct and immediate "targets" and "victims" of the alleged misconduct, actually employed the employees "poached" in the "Raid," and shared an alleged ownership interest with their parent company in certain confidential information that was allegedly stolen and then misused in connection with the "Raid" itself.

With respect to the first step of the analysis, the District Court properly found that the Tullett Subsidiaries are necessary parties under Rule 19(a)(1)(B). Specifically, the two subsidiaries "claim[] an interest relating to the subject of the action and [are] so situated that disposing of the action in the person[s'] absence may . . . as a practical matter impair or impede the person[s'] ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i). Both Tullett Americas and Tullett Financial, as wholly-owned subsidiaries, the employers of the "raided" employees, and, at the very least, the alleged co-owners with the parent company of intellectual property, have a clear interest in the subject of the present action. As the District Court noted, the adjudication of Tullett Prebon's "right to relief necessarily requires the Court to determine the wrongfulness of BGC's conduct as to the absent subsidiaries" and "to make rulings on legal and factual matters that are at the *core* of the Tullett Subsidiaries pending arbitration." Tullett Prebon, 2010 WL 2545178, at *7 (emphasis added).

7

Turning to the second step of the analysis, the district court must ascertain under Rule 19(b) "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." In making this determination, the court specifically considers: (1) the extent to which a judgment rendered in the person's absence might prejudice either that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided; (3) whether a judgment without the person would be adequate; and (4) whether the plaintiff would otherwise have an adequate remedy if the action were dismissed. Id. The District Court did not abuse its discretion by finding that all four of these factors weighed in favor of dismissal.

For instance, we note that the District Court appropriately found that both the absent subsidiaries and BGC might be prejudiced by a judgment in this action, especially in light of the ongoing arbitration proceedings. In other words, the current action "necessarily calls for a determination of the lawfulness of the BGC entities' hiring of the Tullett Subsidiaries' employees, and thus a disposition in this action could prejudice the rights of the absent parties." Tullett Prebon, 2010 WL 2545178, at *8. There is also a "real threat of duplicative recovery" and "contradictory rulings," because "the same alleged wrongdoing at the heart of the Tullett Subsidiaries' FINRA arbitration is also the basis for recovery here." Id. The District Court then went on to observe that Tullett Prebon "would not be left without remedy by a dismissal of this action for non-joinder" because the parent company's alleged market capitalization loss "would presumably be rectified by a victory for the subsidiaries in the arbitration" and its reputation would likewise "benefit from the cessation of any further 'raiding' or BGC hiring of Tullett

8

employees." Id.  We add that BGC itself acknowledges in its appellate brief that, in the event that the arbitration ultimately fails to provide complete relief, Tullett Prebon could commence a state court action with respect to any remaining issues.

III.

For the foregoing reasons, we will affirm the District Court's dismissal.