JORDAN, Circuit Judge,
concurring in the judgment.
To affirm the District Court on Rule 12(b)(6) grounds, my colleagues in the Majority read the Plaintiffs’ Complaint narrowly to avoid the unsettled legal question of whether Pennsylvania’s gist of the action doctrine permits a fraudulent inducement claim when the defendant’s supposed misrepresentation was that it intended to perform the duties established in the contract although it in fact never so intended.[1] I agree that we need not reach that question, but the reason it should be avoided is that the District Court provided an alternative and more straightforward basis to dismiss the Complaint, namely that dismissal was warranted under Rule 12(b)(7) for failure to join an indispensable party under Rule 19. Because the District Court was correct that this case is potentially missing an essential party, who may upset complete diversity, I would affirm on that ground rather than reaching the merits.
As the Majority indicates, the party that actually purchased the notes from the De-' fendants was not any of the Plaintiffs in this suit, but rather an unjoined party, Remar Investments, LP (“Remar”). In fact, the contract that was supposedly fraudulently induced does "not include any of the Plaintiffs as parties. Rather, it was between Remar and Defendant JV Holdings, LLC. After receiving the mortgage notes from JV Holdings, Remar was to assign them to Plaintiff USMR Fund 2, in which Remar would own a majority share. The Plaintiffs allege that USMR Fund 2 is now completely owned by Oakmont Note Group, LLC (“Oakmont”), which is in turn completely owned by Downs and Dunkel.[2] *822 They also claim that Remar has assigned all rights in the mortgage notes to USMR Fund 2. Based on those facts and aver-ments, the District Court was concerned that Remar was an indispensable party to this litigation, and I share that concern.
In reviewing the District Court’s Rule 12(b)(7) analysis, we employ a generally deferential standard.
To the extent a district court’s Rule 19(a) determination is premised on a conclusion of law, this court’s review is plenary. Findings of fact are reviewed for clear error. This court reviews for abuse of discretion a district court’s Rule 19(b) determination that a party is indispensable and that dismissal is required because the party’s joinder would destroy subject matter jurisdiction.
Huber v. Taylor, 532 F.3d 237, 247 (3d Cir.2008) (citation omitted).
The District Court properly engaged in the necessary two-step analysis for evaluating whether a party is indispensible under Rule 19. A court “first must determine whether the absent [parties] should be joined as ‘necessary’ parties under Rule 19(a). If they should be joined, but their joinder is not feasible inasmuch as it would defeat diversity of citizenship ..., [a court] next must determine whether the absent parties are ‘indispensable’ under Rule 19(b).” Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007).
in this case, the District Court determined that Remar was a necessary party under Rule 19(a)(1)(B), which makes a party necessary if that person “claims an interest relating to the subject of the action and is so situated that disposing of the action in the person’s absence may ... leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.” Fed.R.Civ.P. 19(a)(1)(B). It is undisputed, as observed by the District Court, that “Remar is a party to the contract underlying the plaintiffs’ claims.” (App.22.) In evaluating the Plaintiffs’ proffered “assignment” of Re-mar’s rights,[3] the Court concluded that “[i]t is not clear ... that Remar actually assigned all of its rights and interests in the subject of this action,” as the supposed assignment “makes no mention of an assignment of Remar’s rights under the contract itself, or of an assignment of any fraud claim that Remar might have against defendants.” (App.23.) Moreover, the Court determined that “Remar refused to grant the defendants a full release from liability, indicating that Remar may indeed institute some action against the defendants in the future.” (App.25.) Accordingly, the District Court found that Remar was a necessary party. In the Court’s words, it could not “see how it [could] allow the case to go forward without Re-mar; the risk of prejudice to the defendants is too great.” (App.25.)
*823 The Plaintiffs contend that Remar is not a necessary party because it “has no interest in USMR Fund 2, other than” its rights under voting trust and commercial security agreements and as trustee of USMR Fund 2. (Opening Br. at 39.) But the voting trust agreement cited by the Plaintiffs indicates that Remar remains a trustee of “one hundred percent ... of the ... membership interests in USMR Fund 2 LLC,” suggesting that it may still retain an interest in USMR Fund 2 and the mortgage notes. (App.261.) The Plaintiffs also argue that they “were personally liable to Remar for the entire $740,000 under a handshake deal” and that they had in fact paid Remar in full. (Opening Br. at 39.) But they cite no evidence for those assertions, which run headlong into the District Court’s finding that the Plaintiffs did not “produce[] any evidence of the alleged indemnification” of Remar nor any evidence that they “would indeed be able to indemnify Remar for any losses Remar suffered.” (App.23.) I therefore see no basis to upset the District Court’s factual findings, which sufficiently support its conclusion that Remar was a necessary party.
That opens the second part of the Rule 19 analysis, determining whether joinder is feasible. The Plaintiffs suggest that, if Remar is a necessary party, it could simply be joined by the Court under Rule 19(a)(2), but they provide no -reasoning to support the claim that joinder would be feasible. The District Court rightly noted that, “[djespite over two years of litigation ... the plaintiffs have not established the citizenship of Remar.” (App.24.) The primary evidence before the District Court on the Rule 12(b)(7) motion was an affidavit from Remar’s principal averring that Remar’s general partner was Remar Holdings, LLC, a California limited liability company. Even if we were to credit that affidavit, however, it provides just enough information to know that we need much more to determine Remar’s citizenship — namely the identities of Remar’s limited partners and the members of Re-mar Holdings. See Carden v. Arkoma Assocs., 494 U.S. 185, 195, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990) (holding that a limited partnership’s citizenship depends upon the citizenship of both its general and limited partners); Zambelli Fireworks Mfg. Co. v. Wood) 592 F.3d 412, 420 (3d Cir.2010) (“[T]he citizenship of an LLC is determined by the citizenship of its members.”).[4] Given the Plaintiffs’ ongoing intransigence in declining to provide the information necessary to determine Remar’s citizenship, the District Court did not abuse its discretion in determining that joinder was not feasible.[5]
*824 Based on its conclusions that Remar was a necessary party to avoid prejudice to the Defendants, and that Remar’s citizenship for diversity purposes was indeterminate, the District Court acted reasonably within its discretion in ruling that Remar was an indispensible party that could not be feasibly joined. Dismissal was thus proper under Rule 12(b)(7).
Accordingly, I would affirm the District Court’s dismissal order on Rule 19 grounds rather than reach the merits of the gist of the action dispute. I therefore concur in the judgment of the Court.

.‘ As the Majority indicates, when reviewing an order granting a Rule 12(b)(6) motion, we "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.” Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (internal citation omitted). Reading the Complaint most favorably to the Plaintiffs, I believe that they have pled that they were induced to enter the transaction by the Defendants’ misrepresentation of an intent to perform on the sale. Specifically, the Plaintiffs say that (1) "Defendants ... falsely induced [them] to advance $740,000 based on false statements that the advance would be used to purchase a discreet group of enforceable loans known as NSP-0234,” (App. 44 ¶ 50), (2) Defendants "knew at the time they induced [Plaintiffs] to provide the $740,000 that the statements were false,” (App. 45 ¶ 51), and (3) Defendants "did not intend to use the $740,000 to purchase NSP-0234 ... but intended to use those funds and did in fact use those funds to conduct a different transaction,” (App. 45 ¶ 52). The Plaintiffs also allege that a significant portion of the purchase was never delivered so that the Defendants did not, in fact, perform. Therefore, the Plaintiffs appear to claim that the Defendants induced them to enter the transaction without ever intending to perform. To affirm on Rule 12(b)(6) grounds, we would thus have to resolve whether Pennsylvania’s gist of the action doctrine precludes fraudulent inducement claims based on misrepresentations of intent to perform.

. Specifically, the Plaintiffs allege in their Complaint that "Oakmont owns 100% of USMR 2,” (App. 40 ¶ 6), and that "Plaintiff Downs owns 50% of Oakmont and 50% of *822 USMR 2 while Plaintiff Dunkel owns 50% of Oakmont and 50% of USMR 2," (App. 39 ¶ 5). Read literally, the allegations about the ownership interests in USMR Fund 2 add up to 200%, I infer that the Complaint means to allege that Downs and Dunkel each own half of Oakmont, which in turn owns all of USMR Fund 2.

. The record contains a document titled "Assignment of Promissory Notes,” in which Re-mar purportedly assigned to USMR Fund 2 "all rights ... and all interest due” on the "171 promissory notes” from the Loan Sale Agreement between JV Holdings and Remar. (App.241.) The District Court correctly observed, however, that the document does not address any other rights, such as contract or tort claims, arising from the transactions at issue in this case.

, ‘‘[A]s with partnerships, where an LLC has, as one of its members, another LLC, the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be to determine the citizenship of the LLC.” Zambelli Fireworks, 592 F.3d at 420 (internal quotation marks omitted).

. The Plaintiffs' vague response with regard to Remar’s citizenship seems characteristic. In the first iteration of this suit (dismissed for lack of subject-matter jurisdiction), the District Court ordered the Plaintiffs to provide information "regarding Remar’s partners and their citizenship.” (Oakmont Note Group LLC v. Andrews, No. 2:12-cv-05257-MAM (E.D.Pa.), ECF No. 59). The Plaintiffs’ substantive response was an affidavit similar to the one filed in this case, there averring that Remar was "administered by Remar Holdings LLC, a Nevada limited liability company, and owned in part by an individual residing in California, a California Revocable Family Trust, and a Nevis limited liability corporation.” (Id. at ECF No. 60-6). That did little more than point out how much more information would be necessary to determine Re-mar’s citizenship — namely, the membership of Remar Holdings LLC, the legal domicile of the California resident, the trustee of the revocable family trust, and the membership of the Nevis LLC.