Glenda JOHNSON et al., Plaintiffs,

v.

SMITHKLINE BEECHAM
CORPORATION et al.,
Defendants.

Civ. No. 11–5782.

United States District Court,
E.D. Pennsylvania.

March 29, 2012.

---

Craig R. Spiegel, Nick Styant–Browne, Steve W. Berman, Hagens Berman LLP, Seattle, WA, Jeffrey L. Kodroff, John A. Macoretta, Spector Roseman Kodroff & Willis, P.C., Mary Ann Giorno, Spector Roseman Kodroff & Willis, P.C., Philadelphia, PA, Kay Gunderson Reeves, Gordon & Reeves LLP, Dallas, TX, for Plaintiffs.

Michael T. Scott, Melissa A. Wojtylak, Melissa A. Wojtylak, Reed Smith LLP, Kenneth A. Murphy, Drinker Biddle & Reath LLP, Adam S. Tolin, Dechert LLP, Albert G. Bixler, Rachel Castillo Rosser, Eckert Seamans Cherin & Mellott LLC, Philadelphia, PA, Bruce R. Kelly, Anand Agneshwar, Arnold & Porter, New York, NY, Daniel S. Pariser, Arnold & Porter LLP, Washington, DC, Sara J. Gourley, Sidley Austin LLP, Chicago, IL, for Defendants.

## *MEMORANDUM*

DIAMOND, District Judge.

Plaintiffs Glenda Johnson (a Louisiana citizen) and Steven Lucier (a Pennsylvania citizen) brought this action in Philadelphia Common Pleas Court, alleging that thalidomide—a drug developed, produced, and distributed by Defendants—caused Plaintiffs to suffer severe birth defects. *(Doc. No. 1, Ex. A.)* Invoking diversity jurisdiction, Defendants removed to this Court. *(Doc. No. 1.) See* 28 U.S.C. §§ 1332(a)(1), 1441(a). Plaintiffs now ask me to remand, arguing that: 1) Defendants GlaxoSmithKline LLC, GlaxoSmithKline Holdings (Americas) Inc., SmithKline Beecham Corporation, and Avantor Performance Materials are Pennsylvania citizens, thus defeating complete diversity; and 2) SmithKline Beecham Corporation did not consent to removal. *(Doc. No. 17.) See* 28 U.S.C. § 1332(a)(1); *Balazik v. County of Dauphin,* 44 F.3d 209, 213 (3d Cir. 1995). For the reasons that follow, I will not remand. Because members of this

Court have made contrary determinations as to the GlaxoSmithKline Defendants' citizenship and will continue to do so absent appellate guidance, I conclude that this important jurisdictional issue is "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from [my] order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

## I. LEGAL STANDARDS

■ For diversity jurisdiction to exist, no defendant in a civil action may be a citizen of the same state as any plaintiff. *See* 28 U.S.C. § 1332(a)(1); *Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., Inc.,* 316 F.3d 408, 410 (3d Cir.2003) (citing *Carden v. Arkoma Assocs.,* 494 U.S. 185, 187, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990)). Because this matter began in state court, diversity must have existed both when the Complaint was filed and when the matter was removed. 14B Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Joan E. Steinman, *Federal Practice and Procedure* § 3723 & n. 15 (4th ed. 2009) (collecting cases).

■ The removing party must establish federal jurisdiction. *Hertz Corp. v. Friend,* —— U.S. ——, 130 S.Ct. 1181, 1194, 175 L.Ed.2d 1029 (2010).

> In determining whether diversity exists, the court "may demand" that ... "jurisdictional facts" be established by an evidentiary preponderance.... "When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof."

*Greenberg v. Macy's,* No. 11–4132, 2011 WL 4336674, at *2 (E.D.Pa. Sept. 15, 2011) (quoting *Hertz,* 130 S.Ct. at 1194–95; *Frederico v. Home Depot,* 507 F.3d 188, 194 (3d Cir.2007)).

■ The Third Circuit has held that as with "partnerships and other unincorporated associations," the citizenship of a limited liability company "is determined by the citizenship of its members." *Zambelli Fireworks Mfg. Co. v. Wood,* 592 F.3d 412, 420 (3d Cir.2010). A corporation is a citizen of the state in which it is incorporated and the state where its principal place of business or "nerve center" is located. 28 U.S.C. § 1332(c)(1); *Hertz,* 130 S.Ct. at 1192. Accordingly, a business incorporated in one state with a nerve center in another state is a citizen of both states. *See Davis v. Union Pac. Ry. Co.,* 224 Fed.Appx. 190, 191 (3d Cir.2007). A corporation may have only one nerve center, however. *Hertz,* 130 S.Ct. at 1193. It is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 1192. This is not necessarily where a business's bylaws or government filings suggest "nerve center activities" will take place. *See id.* at 1195 (SEC filing does not establish nerve center); *Buethe v. Britt Airlines, Inc.,* 787 F.2d 1194, 1196 (7th Cir.1986) (registered office provided in articles of incorporation does not establish nerve center); *Guitar Holding Co. v. El Paso Natural Gas Co.,* No. 10–214, 2010 WL 3338550, at *5 (W.D.Tex. Aug. 18, 2010) (address provided in tax filings does not establish nerve center).

The Supreme Court has cautioned that

> if the record reveals attempts at manipulation—for example, that the alleged "nerve center" is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat—the courts should instead take as the "nerve center" the place of actual direction, control, and coordination, in the absence of such manipulation.

*Hertz,* 130 S.Ct. at 1195. The *Hertz* Court recognized that "there may be no perfect test that satisfies all administrative and purposive criteria," and that "there will be hard cases" under the nerve center test. *Id.* at 1194; *see also id.* ("We understand that ... seeming anomalies will arise. However, in view of the necessity of having a clearer rule, we must accept them.").

## II. RECORD

The Parties have agreed to proceed on the jurisdictional record made before Judge Savage in *Brewer v. SmithKline Beacham Corp.,* 774 F.Supp.2d 720 (E.D.Pa.2011). *(Doc. No. 17, Exs. 4–6; Doc. No. 34, Exs. 1–2, 5.)* The Parties have supplemented this record with documents related to the Defendants' principal places of business, including Defendants' business records, information from their websites, and four affidavits. *(Doc. No. 17, Exs. 1–3, 7–14; Doc. No. 34, Exs. 3–4, 6–9; Doc. No. 39, Exs. A–F.)*

## III. DISCUSSION

 My ruling as to jurisdiction turns largely on the differences between a "holding company" and an "operating company." A holding company is typically described as a business that exists solely to own and manage its investments in other companies, and does not engage in its subsidiaries' operations. *See, e.g., Holland Am. Line Inc. v. Wartsila N. Am., Inc.,* 485 F.3d 450, 454 (9th Cir.2007); *Corley v. Rosewood Care Ctr., Inc. of Peoria,* 388 F.3d 990, 994 (7th Cir.2004). An operating company, however, produces goods or provides services to customers. *See, e.g., Boyer v. Crown Stock Distrib., Inc.,* 587 F.3d 787, 790, 791 (7th Cir.2009); *Boase v. Lee Rubber & Tire Corp.,* 437 F.2d 527, 528 n. 1 (3d Cir.1970).

### A. Diversity Jurisdiction

Plaintiffs argue that I must remand because, like Mr. Lucier, GSK LLC and Holdings are Pennsylvania citizens. They base their argument principally on *Brewer,* in which Judge Savage ruled that both LLC and Holdings are Pennsylvania citizens. 774 F.Supp.2d at 732. Because I respectfully disagree with Judge Savage's reasoning, I am compelled to reject Plaintiffs' contention and deny their Motion. Because, as I have noted, this jurisdictional issue has divided and will continue to divide this Court, I have concluded that the issue meets 28 U.S.C. § 1292(b)'s requirements.

### GSK LLC

LLC is a pharmaceutical and consumer healthcare company with its principal place of business in Philadelphia. Once again, however, a limited liability company's citizenship is determined solely by the citizenship of its members, not by the state in which it is legally organized or has its nerve center. *See Zambelli,* 592 F.3d at 420; *Hicklin Eng'g, L.C. v. Bartell,* 439 F.3d 346, 347–48 (7th Cir.2006); *Brewer,* 774 F.Supp.2d at 725.

Because GSK LLC's sole member is Holdings, its citizenship is determined by that of Holdings. *(Doc. No. 17, Ex. 4 at 18.)* As I will explain, Holdings—and by extension, GSK LLC—are citizens of Delaware, not Pennsylvania.

### GSK Holdings

 Holdings is a citizen of its state of incorporation and the state where its nerve center is located. 28 U.S.C. § 1332(c)(1); *Hertz,* 130 S.Ct. at 1192. It is undisputed that Holdings is incorporated in Delaware. *(Doc. No. 17–1 at 19.)*

As a holding company, Holdings does not operate GSK LLC. *(Doc. No. 17, Ex. 4 at 59, 147–48, 150, 166.)* Rather, it manages United States investments—in-

cluding assets other than GSK LLC—within the group of companies headed by Holdings's and LLC's "ultimate parent," London-based GlaxoSmithKline plc. *(Id., Ex. 4 at 14–15, 17, 59–60, 191–92, Ex. 5 at 115, 117, Ex. 6 at 20.)* In this investment role, Holdings's three-person Board of Directors decides whether to make investments, pay out dividends, and approve restructurings. *(Id., Ex. 4 at 132, 165–66, Ex. 5 at 136, 140, Ex. 6 at 26–28.)*

To carry out these extremely limited activities, Holdings has six officers (three of whom also serve as its Directors) and only one employee, who works in Wilmington and devotes about 20 hours a year to the Company's affairs. *(Id., Ex. 4 at 92, Ex. 5 at 35, 138.)* Holdings's office is a ten-by-ten-foot room in Wilmington that it subleases from Wilmington Trust. *(Id., Ex. 5 at 19.)* Dozens of holding companies have similar one-room offices in the same building. *(Id., Ex. 5 at 22–23.)* The room contains filing cabinets, a desk, Holdings's books and records, a chair, and computer equipment. *(Id., Ex. 5 at 19, 53.)* The office is rarely used. *(Ex. 5 at 19, 25, 53–54.)* Although the office has a telephone, its calls are routed to an answering service in the same building. *(Id., Ex. 5 at 50–52, 61–62.)* The Directors rarely visit the office, and one testified that he did not recall ever having visited it. *(Id., Ex. 4 at 40, Ex. 5 at 53–54.)*

Holdings's three Directors require no more than four 15- to 30–minute Board meetings a year to manage Holdings's affairs. *(Id., Ex. 4 at 42, 66, 166–67, Ex. 5 at 34, 130.)* Although Holdings's bylaws indicate that the meetings will take place in Philadelphia, they have, in fact, taken place in Wilmington exclusively since 2001. *(Id., Ex. 4 at 66–67, 155–57, 164, 190, 203, 206–07; Doc. No. 34, Ex. 1 ¶ 15, Ex. 6.)* The Board's meeting room is in the same building as Holdings's office. *(Doc. No.*

*17, Ex. 4 at 40.)* The meeting minutes and corporate seal are kept in Wilmington. *(Id., Ex. 4 at 156, 206; Doc. No. 34, Ex. 6 ¶ 5.)* The three Directors have their main offices in London, Philadelphia, and Wilmington. *(Doc. No. 17, Ex. 4 at 63.)* The Wilmington Director attends all Board meetings in person; the London and Philadelphia Directors attend most meetings in person. *(Id., Ex. 4 at 76, 90, 92, 127, 161–62, Ex. 5 at 129, Ex. 6 at 23–24.)* They will otherwise attend by telephone. *(Id., Ex. 4 at 66, Ex. 6 at 23–24; Doc. No. 17–1 at 24.)* The Board thus controls all Holdings's actions through resolutions that are considered and passed in Wilmington. *(Id., Ex. 4 at 157–58, Ex. 6 at 24.)* These decisions may be made only by the Directors acting together at these meetings; no single Director has the authority to operate Holdings. *(Id., Ex. 4 at 157–58, 183, Ex. 5 at 132–33, Ex. 6 at 24–25.)*

Because all Holdings's investment-related actions require Board decisions, officers and employees (most of them based outside Delaware) have no management discretion. Rather, they execute these decisions as directed by the Board. *(Id., Ex. 4 at 86–87, 89, 183–84, 188, 193–94, Ex. 6 at 16, 25–28; Doc. No. 34, Ex. 1 ¶ 15.)*

Holdings's Wilmington "footprint" is certainly modest. I must measure that footprint, however, against the modest scope of Holdings's activities. *See 457 Madison Ave. Corp. v. Amedeo Hotels Ltd. P'ship,* No. 04–3030, 2004 WL 1335937, at *1 (S.D.N.Y. June 11, 2004) (Mukasey, J.) (limited partnership is Delaware citizen because partners' corporate activities, though minimal, were conducted in Delaware). Such measurement makes plain that Holdings's corporate "brain" and its nerve center are in Delaware. *See Hertz,* 130 S.Ct. at 1194 (nerve center is where officers direct business operations, not where those operations take place); *Cent.*

*W. Va. Energy Co. v. Mountain State Carbon, LLC,* 636 F.3d 101, 105 (4th Cir.2011) (nerve center is where officers "set[ ] policy and oversee[ ] significant corporate decisions," not where day-to-day operations take place); *S & T Oil Equip. & Mach., Ltd. v. Juridica Invs. Ltd.,* No. 11–542, 2011 WL 1565996, at *3 (S.D.Tex. Apr. 25, 2011) (nerve center of purported shell company was where board of directors met).

Plaintiffs invoke the *Hertz* Court's admonition that a corporation's nerve center is not simply where board meetings take place. *See* 130 S.Ct. at 1192. Plaintiffs ignore, however, that the Court was seeking to determine the nerve center of Hertz—an operating company with extensive activities carried out by 11,230 employees at facilities in 44 states. *Id.* at 1186. The activities of an operating company and those of a holding company are obviously different. As innumerable courts have observed, holding companies do not run the entities they own; rather, all holding companies do is "hold." *See, e.g., Primary Succession Capital, LLC v. Schaeffler, KG,* No. 09–735, 2010 WL 4236948, at *1 (S.D.N.Y. Oct. 26, 2010) ("That holding company ... exists solely as a vehicle to facilitate Georg's ownership interest in Schaeffler, KG and the entire Schaeffler Group."); *Hurth v. Bradman Lake Group, Ltd.,* No. 08–370, 2009 WL 2497993, at *4 (W.D.N.C. Aug. 14, 2009) ("It is undisputed that the UK Defendants are holding companies and neither engages in manufacturing or selling machinery— their subsidiary's primary activities."); *LG Elecs., Inc. v. ASKO Appliances, Inc.,* No. 08–828, 2009 WL 1811098, at *3 (D.Del. June 23, 2009) ("ASKO Holding is merely a passive holding company that engages in no production activities, and does not participate in its subsidiary's day-to-day decisions, propositions LG does not dispute."); *Gurvey v. Cowan, Liebowitz & Latman, PC,* No. 06–1202, 2009 WL 691056, at *1 (S.D.N.Y. Mar. 17, 2009) ("Both Defendants are holding companies whose sole purpose is to hold stock in subsidiaries and other companies."); *In re 15375 Memorial Corp.,* 400 B.R. 420, 423 (D.Del.2009) ("Memorial, a Delaware corporation, is a holding company that has no office or employees and engages in no business other than to act as the sole shareholder of Santa Fe."); *LaPlante v. OneBeacon Ins. Group,* No. 05–496, 2006 WL 3004750, at *1 (D.R.I. Oct. 20, 2006) ("OneBeacon is a holding company, the sole purpose of which is to own various incorporated insurance companies."); *Garshman v. Universal Res. Holding, Inc.,* 641 F.Supp. 1359, 1366 (D.N.J.1986) ("As a public utility holding company, System engages in no commercial activity other than holding the voting stock and debt of its wholly owned subsidiary.").

In noting that the nerve center of a sprawling operating company and the site of its board meetings may be different, the *Hertz* Court was not referring to these myriad holding entities, whose limited, ownership-related activities are necessarily "direct[ed], control[led], and coordinat[ed]" by their boards. *Hertz,* 130 S.Ct. at 1192. Because Holdings's Board undertakes its activities entirely in Wilmington, Holdings's nerve center is in Delaware. *Cf. Bellomo v. Pa. Life Co.,* 488 F.Supp. 744, 746 (S.D.N.Y.1980) ("Where a holding company is nothing more than an investment mechanism ... [t]he business of the parent is the business of investment, and that business is carried out entirely at the parent level.").

Plaintiffs contend that Holdings's emphasis on its boardroom activities is simply an "attempt[ ] at [jurisdictional] manipulation"—that the Wilmington boardroom is tantamount to "a mail drop box, a bare office with a computer, or the location of an annual executive retreat." *Hertz,* 130

S.Ct. at 1195. Again, Plaintiffs ignore that because Holdings is not an operating company, its most significant activities are limited and necessarily conducted by its Board of Directors alone. Moreover, there is nothing to suggest that the GSK Defendants implemented their particular holding structure to "manipulate" jurisdiction. *(Doc. No. 17, Ex. 4 at 142, 201–02.) See id.; Brewer,* 774 F.Supp.2d at 730 ("LLC was formed to accomplish a legitimate business purpose and not to manipulate jurisdiction for litigation purposes."). On the contrary, it is undisputed that Holdings was incorporated in Delaware in 1999, that it has investments other than LLC, and that Holdings's limited activities have remained the same since its formation. *(Id., Ex. 4 at 59, 146–47, Ex. 5 at 117; Doc. No. 34, Ex. 1 ¶¶ 14–15.)*

Plaintiffs also argue that under Delaware law, Holdings "delegated" its operational responsibilities to GSK LLC. Accordingly, they contend that because this owner-subsidiary structure is highly unusual, I must conclude that Holdings's nerve center is located where LLC's officers carry out those operations. The law suggests just the opposite. *See Danjaq, S.A. v. Pathe Commc'ns Corp.,* 979 F.2d 772, 775 (9th Cir.1992) (subsidiary's activities not attributed to parent in determining citizenship); *Pyramid Sec. Ltd. v. IB Resolution, Inc.,* 924 F.2d 1114, 1120 (D.C.Cir.1991) (same); *cf. In re Am. Int'l Group, Inc.,* 965 A.2d 763, 816 n. 194 (Del. Ch.2009) (citing *HMG/Courtland Props., Inc. v. Gray,* 729 A.2d 300, 307 (Del.Ch. 1999)) (subsidiary that maintains independent identity is not parent company's alter ego).

I agree that Delaware law gave Holdings, as owner of LLC, the authority to operate LLC, had it chosen to do so. *See* 6 Del. C. § 18–402. Plaintiffs' suggestion notwithstanding, the statutory conferral of

such authority is hardly unusual. *See, e.g.,* Cal. Corp.Code § 17151; 805 Ill. Comp. Stat. 180/15–1; N.J. Stat. Ann. § 42:2B–27; N.Y. Ltd. Liab. Co. Law § 408; 15 Pa. Cons.Stat. § 8941. Moreover, Plaintiffs have identified no provision of Delaware law that *required* Holdings to manage LLC. On the contrary, they concede that "Holdings as the sole member was not obligated to retain management control." *(Doc. No. 17–1 at 31.)* Further, apart from *Brewer,* Plaintiffs cite no decision (and I have found none) that adopts this delegation argument. *Cf. J.A. Olson Co. v. City of Winona,* 818 F.2d 401, 412 (5th Cir.1987) (nerve center may be found outside corporation where *the corporation's* activities are managed by a separate company) (discussing *Toms v. Country Quality Meats, Inc.,* 610 F.2d 313 (5th Cir. 1980)).

In these circumstances, Holdings's decision to conduct only ownership activities and "delegate" operational authority is typical of all holding companies and determines neither Holdings's nor LLC's citizenship. *See Carden,* 494 U.S. at 192, 195, 110 S.Ct. 1015 (partnership's citizenship determined by citizenship of managing partners and non-managing partners alike); *Zambelli,* 592 F.3d at 419 (limited liability company takes members' citizenship despite their passive management role); *Gen. Tech. Applications, Inc. v. Exro Ltda,* 388 F.3d 114, 121 (4th Cir. 2004) (limited liability company assumes citizenship of its corporate member); *Harvey v. Grey Wolf Drilling Co.,* 542 F.3d 1077, 1079–80 (5th Cir.2008) (limited liability company assumes citizenship of its holding company member); *S & T Oil,* 2011 WL 1565996, at *3 (purported shell company's nerve center is located where board directs company's activities); *457 Madison Ave. Corp.,* 2004 WL 1335937, at *1 (holding company partner and its limited partnership were Delaware citizens because

holding company was directed from Delaware).

The result Plaintiffs urge would effectively construe all holding companies out of existence and contravene *Hertz*. By Plaintiffs' logic, a Delaware corporation that holds fifteen limited liability companies operating in fifteen different states might well have fifteen nerve centers. The Supreme Court has condemned precisely such an "anomalous result," noting that the lower court's "novel citizenship rule" meant that Wachovia Bank "would be a citizen of 16 States." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 317, 126 S.Ct. 941, 163 L.Ed.2d 797 (2006) (construing citizenship statute for national banking associations, 28 U.S.C. § 1348).

Moreover, there is no indication that the *Hertz* Court intended to create a "holding company exception" to its admonition that a corporation has only one nerve center. *See Hertz*, 130 S.Ct. at 1193 ("A corporation's 'nerve center,' usually its main headquarters, is a single place."). Indeed, the creation of such an exception would necessitate the kind of "complex jurisdictional administration" the *Hertz* Court condemned. *See id.* at 1193 ("Complex jurisdictional tests complicate a case, eating up time and money as the parties litigate, not the merits of their claims, but which court is the right court to decide those claims."); *Balachander v. AET Inc.*, No. 10–4805, 2011 WL 4500048, at *7 (S.D.Tex. Sept. 27, 2011) ("[T]he Hertz Court [rejected] a nuanced and fact-specific test in favor of a bright-line test.").

In sum, a corporation's principal place of business—including that of a holding company—is the state in which *the corporation's* activities are "directed, controlled, and coordinated." *Hertz*, 130 S.Ct. at 1192; *see J.A. Olson Co.*, 818 F.2d at 412; *S & T Oil*, 2011 WL 1565996, at *3; *457 Madison Ave. Corp.*, 2004 WL 1335937, at

*1. Holdings and LLC are distinct entities that conduct significant, but different, business activities. Holdings's nerve center is not in Philadelphia because its investment (LLC) operates there. Rather, Holdings's nerve center is where its ownership decisions are made: Wilmington. Accordingly, Holdings and LLC are Delaware citizens. *See* 28 U.S.C. § 1332(c)(1); *Hertz*, 130 S.Ct. at 1192; *Zambelli*, 592 F.3d at 420.

*Avantor*

■■■ Plaintiffs argue that at the time of removal, Defendant Avantor (the successor corporation to a thalidomide manufacturer) had its "nerve center" in Center Valley, Pennsylvania. Avantor has submitted two affidavits from its general counsel, internal Company memoranda, and a newspaper report, all of which establish that Avantor's headquarters moved from New Jersey to Pennsylvania on September 19, 2011—five days *after* Defendants removed the case. None of the evidence Plaintiffs have submitted contradicts this. *(Doc. No. 17–1 at 38–43; Doc. No. 39 at 26–30.)* Accordingly, at all relevant times, Avantor was a citizen of New Jersey, not Pennsylvania.

B. *SmithKline Beecham's Failure to "Consent" to Removal*

■■■■ All properly joined defendants must consent to removal. *See Balazik*, 44 F.3d at 213. The unanimity rule may be disregarded if "a non-joining defendant is an unknown or nominal party." *(Doc. No. 17–1 at 12 & n. 13.) Id.* at 213 n. 4 (citations omitted); *cf.* 28 U.S.C. § 1441(b) (diversity is determined based on citizenship of real parties in interest); *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) (in diversity cases, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real par-

ties to the controversy"). Nominal parties are "those without a real interest in the litigation." *Bumberger v. Ins. Co. of N. Am.*, 952 F.2d 764, 767 (3d Cir.1991).

■ Plaintiffs argue that because SmithKline Beecham did not consent, the "rule of unanimity" requires remand. *(Id. at 10–13.)* I disagree.

Formerly a Pennsylvania corporation, SmithKline Beecham was converted on October 27, 2009 to GSK LLC, a limited liability company organized under Delaware law. *(Doc. No. 17, Ex. 4 at 19–22; Doc. No. 34, Ex. 1 ¶¶ 3–10.)* This was done to avoid certain tax liabilities. *(Doc. No. 17, Ex. 4 at 18–21, 139.)* *Brewer,* 774 F.Supp.2d at 723. Under Delaware law, GSK LLC is a continuation of SmithKline Beecham, and all SmithKline Beecham's debts and liabilities "remain attached" to LLC. *(Id., Ex. 4 at 145–46, Ex. 6 at 20.)* *See* 6 Del. C. § 18–214(f); 8 Del. C. § 265(f). SmithKline Beecham's senior managers and assets became LLC's senior managers and assets. *(Id., Ex. 4 at 43–47, 142–46.)* SmithKline Beecham's Philadelphia headquarters became those of GSK LLC. *(Id.)* Like SmithKline Beecham, GSK LLC is a pharmaceutical and consumer healthcare business.

Plaintiffs do not dispute that SmithKline Beecham is now GSK LLC. *(Doc. No. 39 at 6–8.)* LLC is thus the real party in interest that consented to removal; no entity named SmithKline Beecham now exists that has "a real interest in the litigation." *Bumberger,* 952 F.2d at 767. Plaintiffs rely upon decisions that are inapposite because they include no consideration of the undisputed fact that GSK LLC *is* SmithKline Beecham, domesticated under Delaware law and operating under a different name. *See Monroe v. Smithkline Beecham Corp.,* No. 10–2140, 2010 WL 2606682, at *3 (E.D.Pa. June 25, 2010), *vacated, Monroe,* No. 10–2140

(E.D.Pa. July 23, 2010); *Aaron v. SmithKline Beecham Corp.,* No. 09–1071, 2010 WL 1752546, at *5 (S.D.Ill. Apr. 28, 2010). Accordingly, "SmithKline Beecham Corporation d/b/a GlaxoSmithKline" is a nominal party whose consent was not required for removal. *See Balazik,* 44 F.3d at 213 n. 4; *see also Navarro Sav. Ass'n,* 446 U.S. at 461, 100 S.Ct. 1779 (nominal party's citizenship must be disregarded for diversity purposes).

Plaintiffs also contend that SmithKline Beecham continues to exist independently of GSK LLC by operation of 15 Pa. Cons. Stat. § 1979, which provides that: 1) an "action or proceeding may be prosecuted against and defended by a dissolved corporation in its corporate name"; and 2) remedies against a dissolved corporation expire two years after the date of dissolution. 15 Pa. Cons.Stat. § 1979(a)(2), (e). Plaintiffs thus argue that SmithKline Beecham continued to exist as a Pennsylvania citizen until two years after its conversion to GSK LLC—over a month after Defendants removed to this Court.

Plaintiffs ignore that SmithKline Beecham domesticated itself as a Delaware corporation pursuant to 15 Pa. Cons.Stat. § 1980, and then converted to a Delaware limited liability company. Though such domestication is termed a "dissolution" under Pennsylvania law, it is not a dissolution "in the ordinary sense." *See* 15 Pa. Cons. Stat. § 1980 cmt. "The existence of the corporation is not affected because the same entity continues to exist in the new jurisdiction of incorporation." *Id.; see Brewer,* 774 F.Supp.2d at 723 ("SKB did not dissolve when it was converted to LLC."). Further, Plaintiffs ignore § 1979's purpose: to provide "an orderly procedure" for corporations that wish to dissolve in fact—and so no longer to exist in *any* form—and "to fix a time beyond which the shareholders need no longer

concern themselves about the possibility that creditors might assert claims which could upset the dissolution." *Am. Optical Co. v. Phila. Elec. Co.,* 228 F.Supp. 293, 295 (E.D.Pa.1964).

Plaintiffs are thus correct in stating that any cause of action against SmithKline Beecham survived its "dissolution," because the cause of action now exists against GSK LLC. *See* 6 Del. C. § 18–214(f); 8 Del. C. § 265(f). They err, however, in suggesting that SmithKline Beecham still exists as an entity separate from LLC.

Plaintiffs also argue that because service was twice accepted on SmithKline Beecham's behalf, this somehow establishes that its existence continued after 2009. Once again, I disagree. Plaintiffs "served" the instant Complaint upon SmithKline Beecham at GSK LLC's Philadelphia headquarters. *(Doc. No. 17, Exs. 8A, 8B at 8, 10, 12.)* It thus appears that LLC—the real party in interest—accepted service for SmithKline Beecham. This does not establish that SmithKline Beecham then existed, nor that its consent was required for removal. *See Balazik,* 44 F.3d at 213 n. 4; *Adams v. AlliedSignal Gen. Aviation Avionics,* 74 F.3d 882, 884, 885 (8th Cir.1996) (service upon operating divisions of real party in interest does not establish they are independent legal entities). Indeed, it would be anomalous (to say the least) if the real party in interest—LLC—could accept service but could not consent on behalf of the same nominal party.

## IV. INTERLOCUTORY CERTIFICATION

■ Two Judges of this Court have already reached contrary conclusions as to whether Holdings and LLC are Pennsylvania citizens. *Compare Brewer,* 774 F.Supp.2d 720 (Savage, J.) (GSK Defen-

dants are citizens of both Delaware and Pennsylvania), *Patton ex rel. Daniels–Patton v. SmithKline Beecham Corp.,* No. 11–5965, 2011 WL 6210724 (E.D.Pa. Dec. 14, 2011) (Savage, J.) (same), *and Maldonado ex rel. Maldonado v. SmithKline Beecham Corp.,* No. 11–2812, 841 F.Supp.2d 890, 2011 WL 7069430 (E.D.Pa. Dec. 12, 2011) (Savage, J.) (same) *with White v. SmithKline Beecham Corp.,* No. 10–2141, 2010 WL 3119926 (E.D.Pa. Aug. 6, 2010) (McLaughlin, J.) (GSK Defendants are citizens of Delaware alone).

GSK LLC and Holdings are also defendants in thalidomide cases removed from state court and pending before Judge Jones and Judge Slomsky of this Court. *Murray v. SmithKline Beecham Corp.,* No. 11–3510 (E.D. Pa. filed May 31, 2011); *Yeatts v. SmithKline Beecham Corp.,* No. 11–6711 (E.D. Pa. filed Oct. 27, 2011). The plaintiffs in those cases have moved to remand, making the same jurisdictional arguments Plaintiffs make here. Although I have ruled that this Court has subject matter jurisdiction, Judges Jones and Slomsky have ruled that it does not. Without guidance from the Third Circuit, Judges of this Court will undoubtedly continue to disagree in the numerous cases involving the GSK Defendants and similarly situated parties. *See, e.g., Maldonado,* 841 F.Supp.2d 890, 2011 WL 7069430 (remanding 27 GSK cases); *Patton,* 2011 WL 6210724 (remanding 9 GSK cases). The resulting uncertainty is extremely troubling. *See Hertz,* 130 S.Ct. at 1193 ("Predictability is valuable to corporations making business and investment decisions.").

■ Statutory restraints on appellate jurisdiction compound these difficulties. *See* 28 U.S.C. §§ 1291, 1292(a), 1447(d). A refusal to remand is appealable, but an order remanding generally is not. *See* 28 U.S.C. § 1447(d), 1453(c); *In re U.S. Healthcare,* 159 F.3d 142, 146 (3d Cir.1998)

(remand for lack of subject matter jurisdiction not reviewable on appeal). Further, Courts of Appeals have resisted perceived attempts to circumvent this rule. *See In re Federal–Mogul Global, Inc.,* 300 F.3d 368, 387–88 (3d Cir.2002) (remand order not reviewable by way of mandamus); *Hunt v. Acromed Corp.,* 961 F.2d 1079, 1082 (3d Cir.1992) (after remand, order denying motion to amend defective notice of removal not reviewable on appeal); *Ray v. Am. Nat'l Red Cross,* 921 F.2d 324, 326 (D.C.Cir.1990) (without accompanying order, jurisdictional question dispositive of remand issue not reviewable on appeal). *But see In re WTC Disaster Site,* 414 F.3d 352, 381 (2d Cir.2005) (declining to address remand issue on appeal, but "inviting" district court to revisit its decision remanding to state court).

Such hurdles to appellate review may prevent this Court from obtaining much-needed guidance in resolving the jurisdictional question respecting the GSK Defendants' citizenship. Accordingly, Judge Jones, Judge Slomsky, and I have agreed to issue our rulings on the same day, and to certify this jurisdictional question for interlocutory appeal. *See* 28 U.S.C. § 1292(b). The Parties have agreed jointly to appeal our Orders. Accordingly, I conclude that the jurisdictional issue respecting the GSK Defendants' citizenship "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from [my] order may materially advance the ultimate termination of the litigation." *Id.*

## V. CONCLUSION

I am well aware that the law requires me to resolve all doubts in favor of remand. *Brown v. Francis,* 75 F.3d 860, 864–65 (3d Cir.1996) (citing *Abels v. State Farm Fire & Cas. Co.,* 770 F.2d 26, 29 (3d

Cir.1985)). I have no doubt, however, as to whether this Court has subject matter jurisdiction here. Accordingly, I will deny Plaintiffs' Motion to Remand.

An appropriate Order follows.

### ORDER

**AND NOW,** this 29th day of March, 2012, for the reasons set out in my Memorandum Opinion, it is hereby **ORDERED** as follows:

1. Plaintiffs' Motion to Remand *(Doc. No. 17)* is **DENIED;**

2. For diversity jurisdiction purposes, Defendants GlaxoSmithKline Holdings (Americas) Inc. and GlaxoSmithKline LLC are citizens of Delaware alone; and

3. The above-captioned matter shall be **STAYED** pending appellate review of this Order.

The Clerk of the Court of Appeals should note that this matter addresses the same jurisdictional issues addressed in *Murray v. SmithKline Beecham Corp.,* No. 11–3510 (E.D.Pa. Mar. 29, 2012) (order granting motion to remand), and *Yeatts v. SmithKline Beecham Corp.,* No. 11–6711 (E.D.Pa. Mar. 29, 2012) (order granting motion to remand).

**IT IS SO ORDERED.**