NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1876
_____

LESLIE SCHALLER,
Appellant

v.

UNITED STATES SOCIAL SECURITY ADMINISTRATION;
COMMISSIONER SOCIAL SECURITY ADMINISTRATION
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 2-18-cv-01625)
Magistrate Judge: Honorable Patricia L. Dodge
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 14, 2020

_____

Before: GREENAWAY, JR., SHWARTZ, and FUENTES, *Circuit Judges*.

(Opinion Filed: January 25, 2021)

_____

OPINION*
_____

GREENAWAY, JR., *Circuit Judge*.

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Leslie Schaller ("Schaller") seeks review of the District Court's dismissal of her claim against the Social Security Administration ("SSA") for potential future loss of her Supplemental Security Income ("SSI") benefits. Finding that Schaller lacks standing pursuant to Article III of the Constitution, we will affirm in part the District Court's order. However, because we conclude that the District Court should have dismissed Schaller's complaint without prejudice, we will reverse in part and remand for further proceedings.

## I. BACKGROUND

The crux of this case is whether Ms. Schaller's SSI benefits will be adversely affected if she moves to a United States Territory—Guam. Before addressing the impact on her benefits, a few words about the SSI program. The SSI program provides benefits payments to aged, blind, or disabled individuals with little to no income. 42 U.S.C. § 1382. Eligibility for the SSI program requires, among other criteria, that an individual be "a resident of the United States." 42 U.S.C. § 1382c(a)(1)(B)(i). An individual forfeits SSI eligibility if she is outside the United States for a full calendar month or thirty consecutive days or longer. 42 U.S.C. § 1382(f)(1). If SSI benefits are suspended because the beneficiary left the United States, the benefits can be reinstated when the beneficiary returns to and remains in the United States for thirty consecutive days. *Id.* The SSI program defines the "'United States', when used in a geographical sense," as the fifty states and the District of Columbia. 42 U.S.C. § 1382c(e).[1] Consequently, neither a

---

[1] In 1976, "Section 228 of Title II and Title XVI of the Social Security Act" were made applicable to the Northern Mariana Islands. Covenant to Establish a

resident of the United States Territories, other than the Northern Mariana Islands, nor an SSI beneficiary who spends a full calendar month or thirty or more consecutive days in a United States Territory, other than the Northern Mariana Islands, is eligible for SSI payments. *Id.*

Schaller was born and raised in Pennsylvania, where she currently resides. She "suffer[s] from myotonic dystrophy,[2] a debilitating, degenerative genetic disorder affecting muscle function and mental processing." App. 74. Based on this condition, she receives SSI benefits. Schaller's condition will eventually progress to the point where she will not be able to live without a caretaker, at which time she will have to make a personal determination as to how she will obtain the required assistance to manage her disability. Schaller states that she will have two options for care: either to remain in Pennsylvania as a ward of the state or to move to Guam – a United States Territory excluded from the SSI program – to be cared for by her family.[3] Schaller also expressed her intent to visit her family in Guam from Thanksgiving to Christmas in 2019.

In anticipation of a possible visit or move, Schaller filed a complaint in the District

Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Pub. L. No. 94-241, § 502(a)(1), 90 Stat. 263, 268 (1976).

[2] Myotonic dystrophy is "characterized by progressive muscle weakness and wasting of some of the cranial innervated muscles, as well as the distal limb muscles," as well as other clinical features, including "myotonia, cataracts, hypogonadism, cardiac abnormalities, and frontal balding." *Myotonic Dystrophy*, STEDMAN'S MEDICAL DICTIONARY (28th ed. 2005).

[3] Schaller's twin sister, who has the same genetic disorder, resides in Guam with their older sister and brother-in-law.

3

Court, asserting that the SSI residency-eligibility requirement violates the Equal Protection clauses of the Fifth and Fourteenth Amendments and the constitutional right to travel. The Government moved to dismiss, pursuant to Rule 12(b)(1), arguing that subject matter jurisdiction was lacking because Schaller failed to comply with the administrative exhaustion requirements of the Social Security Act, which provides for judicial review only after a claim is presented to the SSA and "any final decision" is issued by the Secretary. 42 U.S.C. § 405(g), (h)[4]. The District Court granted Schaller a forty-five-day extension to cure this jurisdictional defect and denied the Government's motion as moot. This extension provided Schaller with an opportunity to submit her claim with the SSA explaining that she believed she was at risk of losing her benefits because of her plans to visit or move to Guam.

Schaller subsequently filed a timely supplemental complaint, alleging that she and her attorney had called the "Social Security service number" on June 5, 2019. App. 75-76. Specifically, Schaller stated that her attorney "told the SSA operator that [Schaller] would need to move to Guam based on an inexorable medical need," and she was also planning a trip there for "Thanksgiving and Christmas [which] would last at least thirty days." App. 75-76. Schaller claims the operator informed her that "she would not be

---

[4] Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . ." 42 U.S.C. § 405(g). Section 405(h) provides that "[n]o findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h).

able to get SSI benefits in Guam," and that "there was no way to escalate the issue to get a different outcome." App. 76.

In response, the Government filed a second motion to dismiss, arguing that Schaller had still not established subject matter jurisdiction because: (1) her phone call failed to satisfy the presentment and exhaustion requirements of 42 U.S.C. § 405(g), (h); (2) she lacked Article III standing as she did "not state an injury that is certainly impending," App. 119; (3) her claim was unripe "because it depends entirely on the occurrence of a contingent set of facts . . . that has not occurred, and that may never occur," App. 105; and (4) she lacked Article III standing to state a claim on behalf of the residents of Guam.

In support of its motion, the Government produced a declaration from Raenetta L. Ellison, a Social Insurance Specialist in the Office of Applications and Electronics Services Support Policy, which confirmed a call occurred but indicated no specific plans or dates had been discussed. Ellison averred that "no remarks regarding travel outside the United States" had been entered in Schaller's record. App. 128. Further, Ellison stated that SSA procedure is to schedule "an internal control to follow up when a beneficiary reports a plan to move or travel but does not have a definite move date," but here no follow-up procedures were initiated, and no notices of payment changes were sent to Schaller. *Id.*

On February 27, 2020, the District Court dismissed Schaller's complaint with prejudice,[5] finding she had failed to satisfy the statutory standing requirement of 42 U.S.C. § 405(g). Having reached this decision, the District Court concluded it need not address the questions of Article III standing and ripeness. *Id.* Schaller filed a timely notice of appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291 to exercise plenary review over the District Court's grant of a motion to dismiss. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017); *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 83 (3d Cir. 2011).[6] Moreover, a federal court always has jurisdiction to determine its jurisdiction. *See, e.g.*, *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010). While the District Court did not address the question of constitutional standing, we must, as Article III standing is an "irreducible constitutional minimum" without which we do not have jurisdiction to address the merits of a plaintiff's claims. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Wayne Land & Min. Grp.,*

---

[5] We remind the District Court of its obligation to make a finding of inequity or futility before dismissing a complaint with prejudice. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile."). Since we are affirming on other grounds, this oversight has no impact on the ultimate outcome of the case.

[6] The parties dispute whether the Government's Rule 12(b)(1) motion constitutes a facial or factual challenge. Even if we were to treat this as a facial challenge and accept all of Schaller's allegations as true, construing all facts in her favor, we would still find her allegations insufficient to satisfy standing. *Horizon*, 846 F.3d at 632–33.

6

*LLC v. Del. River Basin Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020). "The Supreme Court has repeatedly described the question of Article III standing as a 'threshold' issue," and we have a continuing obligation to assure ourselves of our jurisdiction. *Wayne Land*, 959 F.3d at 573–74.

### III. DISCUSSION

Schaller raises multiple arguments on appeal. Before considering any of those arguments, we must first address the question of whether she has constitutional standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 885 (3d Cir. 2020); *Wayne Land*, 959 F.3d at 573–74. Finding that she does not, we cannot reach the merits of any of the claims Schaller pursues.

Article III of the Constitution limits the jurisdiction of federal courts to actual "Cases" or "Controversies." U.S. CONST. art. III, § 2; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 284 (3d Cir. 2018). Where a plaintiff has no standing, there is no justiciable controversy for a federal court to decide. *Toll Brothers, Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009). *See also In re Schering Plough Corp. Intron/Temodar Cons. Class Act.*, 678 F.3d 235, 246 (3d Cir. 2012) ("It is well-established that a plaintiff's Article III standing is a prerequisite for the federal courts to decide the merits of a suit.").

To establish Article III standing, plaintiffs must show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at

7

1547. It is injury in fact, the "first and foremost" step of the constitutional standing analysis, that is implicated before us. *Id.* (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)); *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018).

"The primary element of standing is injury in fact." *Mielo*, 897 F.3d at 478. Injury in fact is comprised of "three sub-elements: first, the invasion of a legally protected interest; second, that the injury is both 'concrete and particularized'; and third, that the injury is 'actual or imminent, not conjectural or hypothetical.'" *Thorne*, 980 F.3d at 885 (quoting *Spokeo*, 136 S. Ct. at 1548). These elements are conjunctive, with no one being dispositive and all necessary. *Cf. Lujan*, 504 U.S. at 561 ("[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.")

The third element – whether the injury is actual or imminent – is at issue here. This element "is intended to weed out claims that are nothing 'more than an ingenious academic exercise in the conceivable.'" *Thorne*, 980 F.3d at 893 (quoting *United States v. Students Challenging Reg. Agency Procs. (SCRAP)*, 412 U.S. 669, 688–89 (1973)). To satisfy this element, "the 'threatened injury must be certainly impending to constitute injury in fact.' And there must be at least a 'substantial risk' that the harm will occur." *Id.* at 893 (internal citations omitted) (quoting *Clapper*, 568 U.S. at 409, 414 n.5). Mere "allegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409. "[A]n injury in fact requires an intent that is concrete" rather than "only 'some day' intentions"

8

because "'some day intentions' do 'not support a finding of the 'actual or imminent' injury'" required to establish standing. *Carney v. Adams*, 141 S. Ct. 493, 502 (2020) (quoting *Lujan*, 504 U.S. at 564). That is, "a bare statement of intent alone" is insufficient to establish imminence. *Id.*

When an injury rests on a claimed desire to travel somewhere, providing specific dates is crucial, as imminency would be "stretched beyond the breaking point when, as here, the plaintiff alleges only an injury at some indefinite future time." *Lujan*, 504 U.S. at 564 n.2. In *Lujan*, the Supreme Court found plaintiffs who claimed a desire to visit and study endangered animals in Egypt and Sri Lanka at unspecified future times had asserted only speculative, indefinite "some day intentions," insufficient to show injury in fact. *Id.* at 563–64. The *Lujan* plaintiffs could not establish standing "without description of concrete plans, or indeed even any specification of *when* the some day will be." *Id.* at 564 (emphasis in original).

Schaller claims to suffer from two injuries: "(1) the frustration of her current desire to travel home to Guam[7] to see her family, due to the SSA's discriminatory policy, and (2) the inevitable harm she will suffer by losing her benefits when she moves to Guam to be in her family's care because of her degenerative disease." Appellant's Reply Br. at 19. However, neither of these alleged harms are sufficiently actual or imminent to demonstrate injury in fact for the purposes of establishing constitutional

---

[7] We note that the complaint alleges that Schaller was born, raised, and currently resides in Pennsylvania. Further, there is no allegation in the complaint that Schaller has ever visited Guam. We are therefore confused by the phrase "travel home to Guam" in the brief.

standing.  *See Johnson & Johnson*, 903 F.3d at 284.  Both Schaller's alleged trip and alleged permanent move are hypotheticals that may never materialize.

Schaller has offered no specific dates for either a permanent move or a longer than thirty-day visit to Guam.  Indeed, she concedes that "the precise date remains unknown" for a permanent move.  Appellant's Br. at 3.  The closest Schaller gets to providing specific dates for a visit is her claim that she wished to travel to Guam from Thanksgiving to Christmas of 2019.[8]  Even if that hypothetical trip was anticipated to last more than thirty days, Schaller has not offered any concrete description of those plans, including her precise dates of travel, and she ultimately decided to forgo the trip entirely. Without further allegations demonstrating that her trip was anything more than speculative, we cannot conclude that she suffered any concrete injury as a result of that choice.  Having decided to forgo that trip, she cannot now claim that she suffered any injury based on that choice, since her proposed travel may not have resulted in a loss of SSI benefits.

Further, when Schaller's medical condition progresses to the point where she requires aid, she will not "inevitably and necessarily" have to move to Guam, as she asserts in her briefs.  Appellant's Reply Br. at 22; Appellant's Br. at 2.  As alleged in her complaint, she may choose to remain in the United States and become a ward of the Commonwealth of Pennsylvania.  It is certainly not inevitable that Schaller will relocate to Guam.

---

[8] We note that this proposed timeframe encompasses only twenty-eight days.

Relying on *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 184 (2000), Schaller attempts to convert her "some day" intention to visit or move to Guam to a "conditional statement" that would support standing. However, this effort is unavailing. In *Laidlaw*, individuals who lived near a hazardous waste incinerator facility claimed they were completely avoiding visiting a specific, nearby area for recreational purposes due to their fear of the contaminated, polluted environment the defendants had created. *Id.* The plaintiffs in *Laidlaw*, who lived within a few miles of the incinerator – the distances ranged from a quarter of a mile to twenty miles – stated that they had previously used the river but now did not do so due to the pollution. Unlike Schaller's "some day" allegations about visiting a distant place she has apparently never before visited, the plaintiffs in *Laidlaw* provided detailed, specific conditional statements about a location close to their homes. We will not equate the ephemeral allegations in Schaller's complaint to the concrete evidence presented in *Laidlaw*.

Schaller also attempts to establish injury in fact by relying on case law applying the American with Disabilities Act (ADA), but the comparisons are inapposite. In the ADA cases, the plaintiffs alleged that they had previously visited locations that did not comply with ADA requirements and that they wished to return to these locations but could not do so because of the lack of ADA compliance. *See*, *e.g.*, *Mielo*, 897 F.3d at 480 n.15 ("Plaintiffs have visited many Steak 'n Shake restaurant locations in the past, and . . . Plaintiffs enjoy the food offered at those restaurants."); *Scherr v. Marriott Int'l Inc.*, 703 F.3d 1069, 1074-75 (7th Cir. 2013) ("Given Scherr's past travel history and her

11

affirmative desire to stay at the hotel but for the alleged violations, on these facts, Scherr has standing to sue the [Courtyard Marriott she has visited in the past].").[9]

Here, although Schaller expresses a desire to visit Guam at some unspecified point in the future, she has failed to allege that she ever visited Guam in the past. Both of these failures – the lack of future specificity and the lack of any prior visits – distinguish her situation from those of the plaintiffs in the ADA cases upon which she relies. She offers nothing beyond wholly insufficient assertions of vague "desires" and "wishes" to possibly visit Guam.

As we find that Schaller has failed to satisfy the actual or imminent element, our inquiry need not discuss the other elements. The Supreme Court has explained that "[s]tanding doctrine ensures, among other things, that the resources of the federal courts are devoted to disputes in which the parties have a concrete stake." *Laidlaw*, 528 U.S. at 170. While we are sympathetic to Schaller's medical challenges, in this instance and at this time, Schaller has not sufficiently alleged facts to position herself as an appropriate plaintiff to challenge the SSI residency-eligibility requirement. We, therefore, will affirm the order dismissing the complaint.

Although we will affirm the order dismissing the complaint, we conclude the District Court erred in dismissing the complaint with prejudice. "Dismissal for lack of standing reflects a lack of jurisdiction, so dismissal . . . should [be] without prejudice."

---

[9] The Seventh Circuit found Scherr lacked standing to sue other Marriott locations where she did not allege an intent to return to those places she had previously visited. *Scherr*, 703 F.3d at 1075.

*Thorne*, 980 F.3d at 896; *see also Cottrell v. Alcon Lab'ys.*, 874 F.3d 154, 164 n.7 (3d Cir. 2017) ("Because the absence of standing leaves the court without subject matter jurisdiction to reach a decision on the merits, dismissals 'with prejudice' for lack of standing are generally improper.").[10]

## IV. CONCLUSION

Because Schaller lacks standing, we will affirm the District Court's order granting the motion to dismiss, but will reverse that part of the order dismissing the complaint with prejudice and will remand for further proceedings.

---

[10] As an example of how standing could be established, Schaller's twin sister filed a complaint in the District Court of Guam successfully challenging the constitutionality of the SSI eligibility requirement on Fifth Amendment Equal Protection grounds. *Schaller v. Soc. Sec. Admin.*, No. 1:18-cv-00044 (D. Guam 2020), *appeal docketed*, *Schaller v. Soc. Sec. Admin.*, No. 20-16589 (9th Cir. Aug. 18, 2020). If and when Schaller actually does move or make a thirty-plus-day visit to Guam, she too could have standing to file a complaint with the appropriate court challenging this statute.